## HORACE VERY versus THOMAS McHENRY.

Where A, an inhabitant of this State, performed labor in New Brunswick, for B, who was an inhabitant of that Province, and C, who was an inhabitant of that Province, received means from B, for the purpose of paying the claims of A and others; his undertaking is to be performed in that Province.

The bankrupt laws of another country cannot govern our Courts, in regard to contracts made there, excepting from a principle of comity, extending the right to other nations, which it demands and exercises for itself.

But where it is manifest, that the foreign bankrupt law was not intended to have effect beyond the jurisdiction of the government, where it was made, the Courts of another government cannot give it an operation beyond the purposes of its authors.

Nor would the Court regard such a law if it should make an unjust discrimination between the foreign and domestic creditor.

A certificate of discharge in bankruptcy, from the contract, according to the law of the place where it is made, and where it is to be performed, is a legal bar to an action in this State, though the plaintiff is, and ever has been, one of its citizens.

And such certificate, under the bankrupt law of New Brunswick, will be a bar to an action on the contract, though the defendant acted originally in a fiduciary character.

THIS was an action of assumpsit. And it came before the Court, upon a statement of facts, from which it appeared that the plaintiff was a citizen of this State, and performed labor for one *Duncan Barber*, upon his mills situated in the British Province of New Brunswick. Toward the close of the same year in which the services were performed, Barber finding himself in failing circumstances, executed for the benefit of his creditors a judgment bond in favor of the defendant, a citizen of New Brunswick. The creditors were named in the bond, and the plaintiff was one of them. Execution upon the bond was taken out by the defendant, and levied on *Barber's* property. The plaintiff specially demanded the amount of his claim of defendant, prior to the commencement of this action.

It also appeared that defendant, since assuming this trust, had obtained a certificate of discharge under the bankrupt law of New Brunswick, and the law was enacted after the services were performed, and the trust assumed. The Court were

authorized to make such inferences from the facts, as a jury might do, on applying to them the principles of law.

*J. & B. Bradbury*, for plaintiff.

The facts agreed upon and the deposition introduced show that the plaintiff had a valid claim against the defendant. The duty of relieving himself from this obligation now rests upon him. To do this, he offered the bankrupt laws of the Province of New Brunswick and certificate of a discharge under them.

He also offered a deposition or two, to show that the whole amount received by him, under the judgment bond, was exhausted in expenses incurred in prosecuting that claim, and in payments to other creditors, than plaintiff.

1st. The decisions of the Supreme Court of the United States have uniformly maintained the doctrine, that bankrupt or insolvent laws have no operation beyond the limits of the State adopting them.

A discharge under a foreign bankrupt law is no bar to an action in this country. *McMillan* v. *McKill*, 4 Wheat. 209; 4 Cond. Rep. 424.

A bankrupt or insolvent law cannot have an extra-territorial operation. Both parties must be citizens of the State where the law is made, and the suit must be brought in that State. *Sturgis* v. *Crowninshield*, 4 Wheat. 122; *Ogden* v. *Saunders*, 12 Wheat. 213; 12 Wheat. 272; 6 Peters, 635. The same doctrine has been held in several cases in the Massachusetts courts. *Proctor* v. *Moore*, 1 Mass. 199; *Baker* v. *Wheaton*, 5 Mass. 511; *Watson* v. *Bourne*, 10 Mass. 337, 340; *Maynard* v. *Marshall*, 8 Pick. 194.

It is not to be denied, that there is much conflict among the authorities of different States upon this subject, and even of the same State; but in Massachusetts the weight of authority seems to restrict the operation of bankrupt and insolvent laws to the territorial limits of the nation making them.

2. Suppose we adopt the broadest rule for which the defendant can contend, and, then tracing out its modifications, let us see to what result we shall arrive. This rule, as laid

down by Judge Story in his Conflict of Laws, is, " That a discharge of a contract by the law of the place where it is made is a discharge every where."

It would be absurd to say that the laws of a foreign nation could have any force in our country, excepting from international comity. The judicial power in each State will use its own discretion in determining how far such laws are to be recognized or sanctioned. And in the exercise of this discretion, certain modifications and limitations of the general rule of "private international law" have been established.

Let us notice some of them. The cases, without exception, hold that if a contract is made, or is to be performed in any other county than that in which the discharge is obtained, such discharge is no bar to the action. Now personal property, including debts, has no locality, but follows the domicil of the owner. *Story's Confl. of Laws*, page 346, sec. 410.

The plaintiff's domicil is, and ever has been, in this State. It is the duty of the trustee, (defendant,) to pay the amount due plaintiff at his domicil.

Another exception to the general rule is, that a foreign bankrupt's discharge will not avail as a defence, where the foreign law is manifestly unjust and injurious to the rights of our citizens. *Story's Conflict of Laws*, § 349 ; 13 Mass. 6.

When the defendant assumed his liability to the plaintiff, the bankrupt law of New Brunswick had not been enacted, nor did it become a law until two years afterwards. This liability was assumed with no reference to such an act by either party. It is a law which no State of this Union could constitutionally pass.

Still another exception is to be found, where the foreign bankruptcy or insolvent law is temporary, local or partial in its operation. Story's Confl. of Laws, § 349, 350, 351. *Prentiss & al.* v. *Savage*, 13 Mass. 20. This latter case is directly in point.

The very title of the New Brunswick law indicates its local character, " an act relating to bankruptcy in this Province." No provision is made with reference to foreign creditors. No

notice to them, or which could possibly reach them, is provided.

Aside from the foregoing considerations, there is still a fatal defect in this defence. The claim, upon which this suit is instituted, is one which cannot be affected by the bankrupt law of New Brunswick. It is not an ordinary debt or contract. It is a case of trust. The money transferred by Barber to the defendant was the plaintiff's. McHenry was but a trustee. His case is like that of an executor or administrator. The money received for plaintiff could not be made by defendant, a portion of his assets in bankruptcy. It could not pass to defendant's assignee. 1 Term Rep. 619; 8 Pick. 113.

From the character of the evidence put in by defendant, the ground will probably be assumed, that he has converted the whole amount placed in his hands by Barber, to the payment of the other creditors intended to be secured by the judgment bond, and that therefore, he is not bound to pay the claim in suit.

To this position are two answers: —

1. The transfer of the property was for the benefit of all the creditors named, among whom the plaintiff was one. If there was not enough to pay in full, there should have been a *pro rata* distribution.

2. But it is not true that the fund has been exhausted by payments to other creditors than the plaintiff, and in expenses, as appears from a careful examination of the evidence. And upon such careful examination, the Court cannot but conclude, that a larger portion of this trust fund than the plaintiff's claim is now in defendant's possession, or has been misappropriated by him, in which case he is justly chargeable.

*F. A. Pike,* for defendant, contended, that there was no evidence to satisfy the Court of any claim against the defendant; but if there was, he relied upon two grounds of defence. And the first was a discharge under the bankrupt law of New Brunswick.

The contract upon which this suit is founded, was made in

New Brunswick. It was also to be performed there. 3 Johns. Ch. 587 ; 6 Peters, 644 ; 3 Wheat. 101 ; 16 Mass. 477.

The general rule is, that a discharge from the contract according to the law of the place where it is made, or where it is to be performed, is good every where, and extinguishes the contract. Story's Confl. of Laws, § 335 ; 2 Kent, 332, and others cited.

According to the bankrupt law of New Brunswick this contract is discharged. *Bankrupt law*, 1843, § 24.

Upon general principles then the certificate of discharge in bankruptcy is a bar to this action.

The only question on this point, is, whether there is any thing which takes it out of the general rule. The plaintiff's counsel offers several reasons why this case is an exception : — 1st. The plaintiff is an American citizen, and therefore not bound by the discharge. To this point he cites 4 Wheat. 209. The gentleman has omitted the most important part of the marginal note to the case, which is " a discharge under a foreign bankrupt law is no bar to an action in this country *on a contract made here.*" The other cases, cited from the United States Court, settle the important point, that under the present Constitution of the United States, the different States cannot pass insolvent laws, which shall bind others than their own citizens. They refer purely to State powers under the Constitution.

As to the decisions from Massachusetts, I think hardly any one of them denies that a contract, *made and to be performed in any country,* is discharged by the bankrupt law of that country.

The continental jurists recognize no distinction between citizens and foreigners. The English decisions are understood to maintain the universality of the doctrine, whatever may be the allegiance or country of the creditor. And a like doctrine would seem generally to be maintained in America. Story's Confl. of Laws, § 340.

The second reason of plaintiff for restricting the operation of this discharge is already answered. The debt in this case, if any, was payable in New Brunswick. It was the plaintiff's

duty to demand the payment of defendant, and defendant to pay the amount due plaintiff at the defendant's domicil. 14 Mass. 428; 3 Pick. 213; 4 Mass. 634.

The third objection is to the law itself, and is the same objection, which is made to all bankrupt laws. But the parties, when they made their contract, should have taken into consideration the power of the legislature to make such a law, although it had not then an existence.

The fourth objection might have some show of support if the law was temporary, local or partial, but I am at a loss to see how either of these epithets can be applied to it.

The other objection to the efficiency of the discharge in bankruptcy, I do not see the force of. In the first place, there is no exception in the New Brunswick law of cases of trust. If the defendant had received moneys of Barber, for plaintiff, and had not paid them over, would not that have constituted a " debt," or if not a debt, such a " claim or demand" as is provided for in the law. There is no proof when the demand was made upon the defendant in this case, but this " claim" could have been proved in bankruptcy even without previous demand.

But suppose there was a "fiduciary" claim in the law, it would then be no better for plaintiff. In New York, under the bankrupt law of 1841, it has been held that debts of a commission merchant, for goods sold and delivered, are not " fiduciary." The money received by an auctioneer or commission merchant, for goods sold and delivered, is his own, and not the money of the owner of the goods entrusted to him for sale. *Commonwealth* v. *Stearns*, 2 Metc. 343. If it is his own money, it passes of course to his assignee.

The second branch of the defence is the obvious one, that defendant has paid out the money received under the judgment bond, to individuals to whom he became responsible for Barber, before taking the bond. The counsel examined this point of the defence at great length, but the ground taken in the decision renders it unnecessary to report his views.

TENNEY, J.— In 1839, the plaintiff, a citizen of this State, performed labor in the British Province of New Brunswick, for Duncan Barber, who resided there.   No special agreement between them being shown, the promise of Barber to make payment was implied ; and he was bound to fulfil that promise on the performance of the service by the plaintiff.   The liability of the defendant, if any existed, resulted from the receipt of means, from Barber, for the purpose of paying the plaintiff's and others' claims.   The transaction which created this supposed liability, took place in the Province of New Brunswick, and the contract, under which the defendant is attempted to be holden, must consequently have originated there.   It was in New Brunswick, that Barber was bound to discharge his obligation in the first instance, and the defendant having assumed the trust to receive money from Barber and to disburse the same to his creditors in that place, he is to be considered as undertaking there to perform these duties.   *Lavasse* v. *Barker*, 3 Wheaton, 101 ;   *Coolidge* v. *Poor*, 15 Mass. 427 ;   3 Johns. Ch. 610 ;   *Boyle* v. *Zacharie & al.* 6 Pet. 644 ;   *Blanchard* v. *Russell*, 13 Mass. 1.

The defendant does not admit, that he was ever under any circumstances liable to the plaintiff.   But if it were otherwise he relies upon the certificate of discharge as a bankrupt under the act of New Brunswick, entitled " an act in relation to bankruptcy," and " an act in addition to and in amendment of the law of bankruptcy," as a defence to this suit.   The certificate is in the case and is admitted in its terms to be a full discharge under the bankrupt law of New Brunswick ; but still the plaintiff insists, that it can have no effect to relieve him from liability in this action.

1. The counsel for the plaintiff contends that the acts referred to, were merely temporary, and not intended in their operation to extend to creditors living beyond the limits of the Province ; or if they were intended to be permanent laws, and to apply to foreign creditors as well as to those residing within the Province, that they are unjust to our citizens, as

Very *v.* McHenry.

withholding from them the benefits, to which domestic creditors were entitled.

It is well understood, that bankrupt laws of another country cannot govern our courts here in regard to contracts made there, excepting from a principle of indispensable comity, extending the right to other nations, which it demands and exercises for itself.   When it is manifest that the foreign bankrupt law, was not intended to have effect beyond the jurisdiction of the government, where it was made, courts of another government cannot give it an operation beyond the purposes of its authors.    If it were designed however to embrace a larger sphere, and to apply to debts due to those out of the jurisdiction, but its provisions insured to domestic creditors in effect all or more than a fair proportion of the assets of the bankrupt, and at the same time provided for the discharge from all claims foreign as well as others, national comity could not be expected to extend so far, as to require courts to lend their aid in doing the injustice that such a law would occasion, to the citizens of the country where they exercise jurisdiction ; where the foreign law must obviously deprive citizens or subjects of another government, of rights, which it secured to its own, it certainly ought not to be respected by tribunals of the former, and in the exercise of the discretion with which they are entrusted, such law would be disregarded.

The acts of the Province of New Brunswick, relied upon by the defendant, are not in their terms temporary only, or limited to claims of persons residing there at the time, when the aid of their provisions should be sought.    From the language used, it may be inferred that they were intended as permanent laws, and to have all the operation and effect of general bankrupt laws.    The notice to be given to creditors is not such as would convey to them the information, that attempts were making to render their debtors subject to the provisions of the law, with so much certainty in all cases as that required by some other bankrupt laws.    But the time allowed, is not so short, or the medium so imperfect as to induce the conclusion, that all creditors beyond the boundary of the Province, were not enti-

tled to prove their claims ; or that they would be prejudiced, if they exercised the care and diligence which the law presumes.    The residence of the plaintiff was so near the Province, that he was secure from loss from this cause, if he observed such care and diligence, and it does not appear that he has suffered by reason of any such supposed defect in the law.

2. It is insisted that if the bankrupt law of New Brunswick is to be treated as a general law applicable to all creditors, as other general bankrupt laws are, effect cannot be given to the certificate of discharge obtained under it, so as to bar a suit in this State in favor of one, who has always been a citizen thereof.    Reference has been made to decisions of the Supreme Court of the United States and of courts of States of the Union, touching the effect of discharges under bankrupt and insolvent laws of individual States, upon suits in courts in other States, than those which passed such laws, or in federal courts sitting in the States, where they existed.    In many respects the principles applicable to such questions, might be supposed to apply also to general bankrupt laws of another country.    But the doctrines of those decisions are by no means uniform ; and the same State has not invariably at different times held the same opinions.    In some of the cases, questions touching remedies rather than rights were presented.    In others, the power of States to pass such laws under the restrictions of the federal constitution was examined.    Judge Story, in his Conflict of Laws of Nations, reviews those opinions without the attempt to reconcile them all ; and in section 341, remarks, "under the peculiar structure of the constitution of the United States, prohibiting States from passing laws impairing the obligations of contracts, it has been decided that a discharge under the insolvent laws of a State, where the contract was made, will not operate as the discharge of any contract excepting such as are made between the citizens of the same State.    It cannot, therefore, discharge a contract made with a citizen of another State.    But this doctrine is wholly inapplicable to contracts and discharges in foreign countries, which must, therefore, be decided upon principles of international law."

It is believed, that in England and in this country, the law touching the effect of a certificate of discharge in bankruptcy obtained in another government is well settled, provided the discharge in the country where it is obtained is absolutely from the contract itself. The general rule is, that a discharge from the contract according to the laws of the place where it is made, or where it is to be performed, is good every where and extinguishes the contract. This rule was recognized by Lord Mansfield in *Ballantine* v. *Golding*, 1 Coop. Bankrupt Laws, 347, 5th Ed. In *Potter* v. *Brown*, 5 East, 124, Lord Ellenborough says, " the rule was well laid down by Lord Mansfield in *Ballantine* v. *Golding*, that what is a discharge of a debt in the country where it was contracted, is a discharge of it every where." And this doctrine is firmly established and generally recognized in America. Story's Confl. Laws, § 335. " The converse of this doctrine is equally well established, viz. that the discharge of a contract by the law of the place where the contract was not made, or to be performed, will not be a discharge in any other country." *ibid.* 342. " The doctrine of the Supreme Court of the United States in *Ogden* v. *Sanders*, 12 Wheaton, 213, is, that a discharge under the bankrupt law of one country does not affect contracts made or to be executed in another. The municipal law of the State is the law of the contract made and to be executed within the State and travels with it, wherever the parties to it may be found, unless it refers to the law of some other country, or be immoral or contrary to the policy of the country, where it is sought to be enforced. This was deemed to be a principle of universal law ; and therefore the discharge of the contract or of the parties, by the bankrupt law of the country where the contract was made, is a discharge every where." 2 Kent's Com. sect. 37, page 293, 2nd ed. ; *Blanchard* v. *Russell*, 13 Mass. 1 ; *Hunter* v. *Potts*, 4 T. R. 182 ; *Smith* v. *Buchanan*, 1 East, 6 ; *Sturgis* v. *Crowinshield*, 4 Wheat. 122 ; *McMillan* v. *McNiel, ibid.* 209 ; *Le Roy* v. *Crowninshield*, 2 Mason, 152, 161, 162 ; *Phillips* v. *Allan*, 8 B. & C. 477.

3. Again it is insisted that this suit is not barred by the discharge of the defendant, because the debt did not arise from an ordinary contract between the parties, but the defendant holds the character of trustee. The funds from which the plaintiff contends he was entitled to payment of his claim against Barber, was received by the defendant originally, acting in a fiduciary character. But he failed to apply those funds on demand, as he was bound to do, so far as the plaintiff was concerned, and was therefore liable for the damages arising from his neglect. It is not contended in behalf of the plaintiff, that the acts of the Province of New Brunswick referred to, by any express provision, exclude trust claims from the general operation of the law ; but it is insisted that by the settled law, such exception is made. We have been referred to no decision in which such a doctrine has been held applicable to facts similar to those agreed in the case at bar. In *Westcott* v. *Hull*, 2 Brown, 305, it was decided that a legacy payable to the legatee at the age of twenty-one years, or marriage with interest, was a vested legacy, and the executor having become bankrupt, might have been proved under the commission, and his certificate was therefore a bar. In *ex parte Holt*, in cases in bankruptcy, before the Court of Review, 1 Deacon, 248, a trustee, who was directed to convert the whole of the testatrix's property into money and place the same at interest upon mortgage for the benefit of the *cestui que trusts*, employed the money in his business, paying interest to the parties entitled to it and afterwards became bankrupt and obtained his certificate, without any proof having been made under his commission for the amount of the trust money either by himself or the *cestui que trusts*, who were entirely ignorant of his misapplication of the trust money ; he became bankrupt a second time, when the *cestui que trusts*, discovered that he had not invested the money pursuant to the trusts of the will ; it was held that his certificate under the first commission was a bar to any proof for the amount under the subsequent fiat. Sir G. Rose, in this case, said, " in the whole course of my experience in bankruptcy proceedings, I

never remember a case, in which it was decided, that where a trustee was liable before his bankruptcy to a *cestui que trust*, for the payment of a sum of money, the certificate would not bar the claim." *Judgment for defendant.*