Todd *v.* Tobey.

WILLIAM TODD, JR. *versus* WILLIAM H. TOBEY.

The plaintiff, with others, were guarantors for the purchase of goods by A of B. Afterwards C purchased A's stock, and informed one of the guarantors that he had assumed to pay the debt due B under the guaranty. Subsequently the guarantors were called on for payment, and on informing C, he repeatedly promised one of them it should be paid. C also made the same promises to the attorney who had the demand for collection. The guarantors paid B's claim, and the plaintiff paid his portion thereof and charged the same to C who acknowledged its justice. *Held* that C's un-

dertaking was not within the statute of frauds, and that there was such privity between the parties, that *indebitatus assumpsit* might be maintained. In such action it is not necessary that all the guarantors should be joined.

THIS was an action of *indebitatus assumpsit*, and came before the Court on a statement of facts. The action was to recover a balance of account of $55,07. Of the bill of particulars filed embracing plaintiff's whole account of $112,63, there was one item : "cash paid S. H. Hitchings, Esq. $57,88."

In March, 1845, about two years before the commencement of this action, the defendant employed one *Hamilton* to do some business for him, and requested him to settle his account with the plaintiff. Hamilton then went as the agent of defendant to settle with Todd, taking with him defendant's account to the amount of $34,94 and two other items, viz : — "Amount paid by Luflin, $6,50," and "William Todd, Sen. account, $16,12," making the whole of Tobey's account against Todd $57,56. The settlement was made in this manner ; upon Tobey's bill against Todd, the amount of Todd's account against Tobey, including the item aforesaid " cash paid Hitchings $57,88," and being $112,63, was entered to the credit of Todd thus : —

" *Supra Credit.*

| | | |
|---|---|---|
| By amount your account | | $112,63 |
| And said Tobey's bill against Todd was balanced by adding to its amount | $57,56 | |
| The balance of Todd's bill against defendant, thus : — New account | $55,07 | $112,63 |

And Hamilton signed the same thus : —

E. E. settled, St. Stephen, March 21, 1845,

" W. H. Tobey,
" By Asa Hamilton."

Hamilton exhibited a copy of this settlement to defendant, who observed, " it takes them to figure," but made no objections to the settlement. Hamilton called his attention to the item "paid Hitchings," and defendant said, " I expected they would likely charge that to me."

The item " cash paid Hitchings $57,88," originated in this way. Sometime in the spring of 1844, one Haycock of St. Stephen obtained a quantity of medicines of one Hale in Boston upon a letter of credit, signed by the plaintiff, one R. M. Todd and others. Sometime afterward the defendant consulted with R. M. Todd about buying out Haycock's stock of medicines, and after this, defendant informed him that he had purchased it, and had assumed to pay the debt due Hale, on that letter of credit. Soon after this purchase, the guarantors were called on to pay the debt due Hale. R. M. Todd spoke of it to defendant, who replied "give yourself no trouble, I will see the debt is settled." Early in the summer of 1844, Hale sent his demand against Haycock, with said letter of credit, to one Hitchings of St. Stephen, an attorney, for collection. Hitchings called on the guarantors, who referred him to defendant and R. M. Todd. The defendant told Hitchings it belonged to him to pay, and that he had promised Haycock to pay it. That he bought Haycock's stock and had agreed to pay this demand of Hale, and that it should be done as soon as he could make some collections. The defendant failed to pay and the plaintiff paid Hitchings his own proportion of the claim in Oct. 1844, being $57,88, and the same amount for R. M. Todd.

Subsequently, the defendant promised R. M. Todd to pay Hale's demand. There was not in the case any evidence of any direct promise, verbal or written, by the defendant to the plaintiff to pay him this item or any portion of Hale's demand, unless it may be inferred from the facts herein stated.

*Thacher,* for plaintiff.

The principal objection to this action is, that the promise to pay Haycock was not in writing, and so within the statute of frauds. We say it was a promise to pay his own debt, for he received the medicines for which the debt was contracted. If it is said, that he cannot be made liable to the guarantors it is an answer, that they paid for the benefit of the defendant, and therefore the claim is as strong against him. If it is objected that it was not paid by request of defendant, it is sufficient to

say, that the law will imply a request to pay, when the party is so situated that he must pay.

But should this view not be sustained, then we say, that the defendant, by his own agreement made by his agent, has allowed this claim of the plaintiff, in writing, and made it the basis of a new account. The agent had the previous authority to settle, and his acts were subsequently approved by the defendant. 17 Mass. 404 and 579 ; 7 Greenl. 361.

*G. F. Talbot*, for defendant.

The statute of frauds is a good defence. There was no promise in writing to pay the demand of Haycock to Hale. No case carries the exception to the rule so far as to include this case. Furthermore, there is no proof of any consideration, and consideration is necessary where promise is not in writing. Chitty on Cont. 465, 466, 467, 468 ; 5 Greenl. 81.

When Haycock died, it was a matter between Hale and Haycock's representative, and the plaintiff can be in no better position than Hale, and he could enforce only to the extent of the fund.

Again, there was no privity of contract between these parties.

It is said that the settlement is a promise in writing. But the agent had no authority to make a promise, and if he did, this is one of the errors which is guarded against in the paper purporting to be a settlement. There does not appear to have been a ratification, such as to bind the defendant.

If there was any promise to pay, such as the law will recognize, it was to the guarantors jointly, and all should have been joined in the suit. 8 Cowen, 168 ; 2 U. S. Dig. § 1, art. 16 and 21.

The opinion of the Court, SHEPLEY and WELLS, *Justices*, concurring in the result, was given by

TENNEY, J. — Goods were purchased by Haycock of Hale, on the strength of a letter of credit signed by the plaintiff, R. M. Todd and others, which we understand, from the statement of facts, made them liable. The defendant afterwards consulted R. M. Todd upon the subject of making the purchase of

Todd *v.* Tobey.

Haycock's stock, and soon after informed him, that he had made it, and had assumed to pay the debt due Hale, on that letter of credit. Subsequently these guarantors were called upon by Hale to pay the debt, and on their informing the defendant thereof, he promised R. M. Todd repeatedly, that he would pay it; and afterwards made the like promise to one Hitchings, the attorney, in whose hands the demand had been left by Hale, saying that he had bought of Haycock his stock, and had agreed to pay this claim, and should pay it; and he requested Hitchings not to call on the guarantors; but the defendant failing to pay, they paid it, on being called upon a second time, to Hitchings.

After the payment made by the plaintiff of his proportion of the debt to Hale, one Hamilton was employed by the defendant to take a bill against the plaintiff and make a settlement with him, and on being inquired of by Hamilton whether he wished to see the plaintiff's account, before he should settle it, he answered in the negative. Among the items of account produced by the plaintiff, was a charge for the money paid by him to Hitchings, and the whole account was placed upon the bill presented by Hamilton as a credit, leaving a balance in favor of the plaintiff of a sum a very little less than the money paid to Hitchings, and under the whole was written, " St. Stephen, March 21, 1845, E. E. settled, W. H. Tobey by Asa Hamilton;" and this was left with the plaintiff. A copy of the bill and the credits were shown by Hamilton to the defendant, who remarked, after examining it, " it takes them to figure," and when his attention was directed to the charge for the payment to Hitchings he said, " I expected they would likely charge that to me," and made no objection to the correctness of the plaintiff's account. For the recovery of this balance, the present suit was brought on February 8, 1847.

The questions made by counsel upon these facts, are, — 1st. Was the defendant's promise within the statute of frauds?—2d. Was there such a want of privity between the parties, as to prevent a recovery? If the negative is the legal answer to these questions, can the plaintiff maintain the action without joining the other guarantors of Haycock's debt to Hale?

If the promise to pay the debt of another, be founded on a new and distinct consideration, independent of the debt, and one moving between the parties to the new promise, it is not a case within the statute. " It is considered in the light of a new promise." *Leonard* v. *Vredenburgh*, 8 Johns. 29. The promise upon a good consideration to pay a debt, which another was alone liable to pay, previously, is not a promise to pay the debt of another, but to pay the debt, which the promise makes his own. *Colt* v. *Root*, 17 Mass. 229 ; *Dearborn* v. *Parks*, 5 Greenl. 81 ; *Farley* v. *Cleaveland*, 4 Cowen, 432 ; 9 *ibid.* 639 ; *Hilton* v. *Dinsmore*, 21 Maine, 410.

The promise of the defendant to pay the debt due to Hale, was upon the consideration of its amount, in the value of goods received by him, and treated in the transaction with Haycock, as money ; a consideration entirely distinct from that which was the foundation of the debt in its origin ; and one moving from Haycock to the defendant. This was not within the statute of frauds.

2. It is well settled, that an action may be maintained by one for whose benefit a promise is made to another. *Schemerhorn* v. *Vanderheyden*, 1 Johns. 139 ; Com. Dig. Assumpsit E ; *Dalton* v. *Poole*, 2 Lev. 210. *Martyn* v. *Hind*, was a case where a rector gave a certificate addressed to the bishop, appointing the plaintiff a curate, promising to allow him a certain sum, as a salary. It was contended, that this was a promise to the bishop, and that the curate could not maintain the action. Lord Mansfield said, " It is in no possible respect a promise, but merely a matter of information to the bishop. The contract is with the curate. Therefore, there is no shadow of objection to the plaintiff's maintaining this action."

In *indebitatus assumpsit*, for money received by a defendant, it has not been regarded as essential in all cases, that the person should be named or distinctly referred to, in order to enable him to maintain an action, in his own name. Such right may depend upon his interest in the money received by, or in the hands of the other party. One cannot legally retain money, which clearly belongs to another, and he is liable to this

action therefor, though no contract existed between them. In *Jacob* v. *Allen*, 1 Salk. 27, an attorney who had collected money, and paid it to an administrator, before it was known that there was a will, was holden liable to the executor in this action. In *Hitchen* v. *Campbell*, 2 Wm. Bl. 830, it was said by the court, " and though when this action was in its infancy, the courts endeavored to find technical arguments to support it, as by a notion of privity, &c., yet that principle is too narrow, to support actions in general to the extent to which they are admitted." " There is a supposed privity of contract between the persons, whose money it lawfully is, and the person, who has got or received it."

The holder of negotiable paper, may strike out, and disregard the intermediate indorsements, and declare as the immediate indorsee of the first indorser ; but between them there is no privity, each indorsement being evidence of a distinct contract ; the contract, to which the holder is a party, is between him and the next preceding indorser. If the suit was against the latter, he, on payment, could recover of the first indorser, and so the judgment would come down upon the indorser first liable ; and a payment to the holder by the first indorser, is a bar to an action in favor of one who is subsequent. The law therefore allows the maintenance of an action against the first indorser, instead of requiring the circuity of action, which " the law abhors." 1 Cranch, 439, and seq.

In *Heard, Assignee,* v. *Bradford,* 4 Mass. 326, the Court use the following language, " We think the rights of the parties must depend upon their interests ; and whenever an award was made nominally to one, when the interest was in another, that other would be entitled to the benefit intended." *Goodridge & al.* v. *Lord,* 10 Mass. 483. In *Hall* v. *Marston,* 17 Mass. 575, it is said by the Court, " The principle of this doctrine is reasonable and consistent with the character of the action for money had and received. There are many cases in which that action is supported without any privity, other than what is created by law. Whenever one man has in his hands the money of another, which he ought to pay over, he is liable to

this action, although he has never seen or heard of the party, who has the right. When the fact is proved, that he has the money, if he cannot show, that he has a legal or equitable ground for retaining it, the law creates the privity and the promise."

In the case before us, Hale had originally a claim against the plaintiff and others, who signed the letter of credit; after the purchase by the defendant of Haycock's stock, Hale had a claim against the defendant, as we have seen. He availed himself of the liability of the guarantors, and obtained payment. After this payment, Haycock was liable to those who made it; but he having provided the means, with which to discharge this debt, and having put them into the defendant's hands under his promise to apply them accordingly, and the defendant having failed to comply, the defendant was liable to Haycock. If suits should be instituted upon all these several liabilities, judgments and satisfaction thereof be obtained, the result would be, that the guarantors would be reimbursed for the money paid by them, from the funds of the defendant. The law applied to the facts admitted, authorize them to reach this object directly instead of being obliged to resort to the circuity of action supposed.

If the guarantors had chosen to look to Haycock for indemnity, each might have maintained a suit for the amount which he had paid. The contract which was implied between him and them, was several and unlike that which they made with Hale. The latter was discharged on the payment made by the guarantors, and could afterwards be enforced by no one. The defendant cannot invoke that contract, to which he held no relation in its inception, as the foundation of an objection, technical in its character, and which was not open to Haycock.

Under the view, which we have taken, the plaintiff can maintain the action upon the facts as they were, immediately after he paid the money to Hale in discharge of his liability. If it were otherwise, the transaction of the 21st March, 1845, when the settlement was made between Hamilton and the plaintiff, with the other facts in the case, would be fully suffi-

Todd *v.* Tobey.

cient.   Hamilton was specially intrusted with the power to make the settlement, without any opportunity of the defendant to examine the account of the plaintiff, when he expected, that such a claim would be preferred against him.   The account was rendered, allowed by the agent, and the whole signed by him for the defendant.   This was a demand, which the defendant had assumed and promised to discharge upon the receipt of full consideration therefor, admitted afterwards his obligation to do so, and when it was known to him, that his agent had treated it as his existing debt, he made no objection to what had been done.        *Judgment for the plaintiff.*