M. J. LAMPSON, *Apt. v. The estate of* ADAM HOBART.

*Statute of frauds. Principal and surety. Estoppel.*

The plaintiff having a demand against H. & D. which he was about to secure by an attachment of their property, the intestate, who had a larger claim against H. & D. than that of the plaintiff, promised that, if the plaintiff would forbear to commence a suit and make cost by attaching the property, he would pay the plaintiff's debt. The plaintiff did forbear, and assisted the intestate in securing his debt by an attachment, with other property, of that which the plaintiff was about to attach *Held* that the promise was not within the statute of frauds, it being an absolute promise, in which the original debtor had no interest, and the consideration being entirely between the plaintiff and the intestate.

A surety is not entitled to an allowance of a claim against the estate of his principal for money paid by him for and as the surety of the deceased, if, with his consent, there has already been an allowance of the same claim against the estate in favor of his co-surety.

APPEAL from the decision of the commissioners on the estate of Adam Hobart, disallowing the plaintiff's claim. The plaintiff filed a declaration in assumpsit. Plea, the general issue ; trial by the court, by agreement of parties, January Term, 1856,—UNDER-WOOD, J., presiding.

It appeared that in June, 1849, one Edward Hobart and one Dubois, partners under the firm of Hobart & Dubois, were indebted to the plaintiff in the sum of $140 for labor, and at the same time were owing the intestate a larger sum, some $5,000. At that time Hobart & Dubois failed, and the plaintiff was about to secure his debt by attachment of property which he knew of, and which was so situated that the plaintiff could have attached it in preference to any other person, and this was known to the intestate, and he agreed, verbally only, that if the plaintiff would forbear to commence a suit and make cost by attaching the property, he would pay the plaintiff's debt ; and relying on this, the plaintiff did forbear to sue, and assisted the intestate to secure his own debt, by attaching all the property of Hobart & Dubois that could be found, including that which the plaintiff had contemplated attaching.

The plaintiff made a further claim for the amount of a bank-note of about $200, which the plaintiff and his father signed as sureties for the intestate to the Bank of Orange County. This note was made to get money to apply on a debt the intestate owed

the appellant's father, who took the note and got it discounted at the bank. All the parties to the note were sued, and a judgment was recovered against them which the appellant paid.

It further appeared that, since the decease of the intestate, his administrator and the appellant's father had a reference of all matters in controversy, under an order of the probate court, in which the plaintiff assisted his father, and was a witness for him before the referees; and it further appeared that the father brought in said bank-note as a claim at said reference, and the same was allowed in his favor in the report of the referees; and it also appeared that the plaintiff had knowledge of the claim being so presented.

Upon the foregoing facts, the court rendered judgment for the plaintiff to recover said first mentioned claim, being the amount of the account against Hobart & Dubois, but nothing on account of said bank-note.

Exceptions by both parties.

*J. P. Kidder* for the plaintiff.

1. As to the claim of the plaintiff against Hobart & Dubois, the case of *Anderson* v. *Davis*, 9 Vt. 136, is decisive.

Where A, in consideration that B would discharge C out of custody at the suit of B, promised so to pay the debt of C, the court held that the promise was not within the statute, because the debt was gone by the discharge out of custody; 1 Saund. 211 and note *s.* A promise to pay a sum of money to the plaintiff, by a third person, if he will withdraw his action, is not within the statute, when there is a new and original consideration of benefit to the defendant, or harm to the plaintiff, moving to the party making the promise; and the subsisting liability of the original debtor is no objection to the recovery. *Farley* v. *Cleaveland*, 4 Cowen 432. A promise to pay an antecedent debt, in consideration of property placed in the hands of the promissor by the debtor, does not require a writing to give it validity. 4 Cowen *supra*; 9 do. 639; 5 Wend. 235. The effect is the same if the promissee relinquish a lien, although merely for the security of the debt itself. *Marain* v. *Mack*, 10 Wend. 461. 1 Smith's L. C. 329, 330. In *Williams* v. *Luper*, 3 Barrow 1886, the abandonment, by a landlord, of a dis-

tress levied on the goods of the tenant was held sufficient to take a promise to pay the rent given by a broker, in whose hands the goods had been placed, out of the statute.

A verbal promise to be answerable for a debt, if the plaintiff would refrain from putting an execution against the debtor into the hands of a sheriff was binding, although the consideration was forbearance, and was so alleged in the declaration. *Russell* v. *Babcock*, 14 Maine 140.

The distinction seems to be, that where the promissor is benefited, the contract need not be in writing; otherwise, where it is solely beneficial to the original debtor.

2. It is a principle as old as is the law that a surety can recover of his principal for money by him paid in that capacity. The fact that the plaintiff was a witness in the reference, and was knowing to the presentation of the note as a claim by his father, did not compromise his right. He was not a party to the reference, or bound by its result,—he was a mere looker-on.

*H. Carpenter* and *P. T. Washburn* for the defendant.

1. The parol agreement made by the intestate to pay the debt of the plaintiff against Hobart and Dubois, being a promise to pay the debt of a third person, is clearly within the statute of frauds, and no recovery can be had for want of a memorandum in writing, and signed by the party to be charged. Hobart & Dubois are still liable to the plaintiff upon their original indebtedness. *Harrington* v. *Rich*, 6 Vt. 666. *Anderson* v. *Davis*, 9 Vt. 136. Chit. on Cont. 202–205. 7 Har. & J. 391. 1 Swift's Dig, 246–250. *Aldrich* v. *Jewell*, 12 Vt. 125. 1 Smith's L. C. 330, 332.

2. The plaintiff cannot recover the money paid on the bank-note.

Having consented to the allowance of it in favor of his father, in his reference, the plaintiff is estopped from making a claim for it in his own favor against the estate, the effect of which would be to compel the estate to pay the debt twice. The allowance to his father, with the knowledge and implied consent of the plaintiff, is a discharge of the defendant's liability to him, and the plaintiff is thereby turned over to his father for his remedy. *Hicks* v. *Cram et al.*, 17 Vt. 449. *Parker* v. *Barber*, 2 Met. 423. *Dewey* v. *Field*, 4 Met. 381. *Strong* v. *Ellsworth*, 26 Vt. 373.

The opinion of the court was delivered by

REDFIELD, CH. J. The decisions are so conflicting upon the question what is requisite to take a promise to pay the debt of another out of the statute of frauds, that it is impossible to reconcile them. Some go so far as to say, that where the undertaking is upon any new and independent consideration, subsequent to the creation of the original debt, it is never to be regarded as within the statute. Upon this rule of construction, if the promise of guaranty of another's debt were made subsequent to the date of the original debt, it would make no difference whether it were in writing or not. For if in writing, it would not be valid, unless upon consideration ; and according to this rule, it is always valid when made subsequent to the original promise, if upon any sufficient consideration. This would virtually repeal the statute. The English cases, and most of the American cases do not go this length. But there are some of considerable weight which do. Of this class is the case of *Russel* v. *Babcock*, 14 Maine 140. And some cases go so far as to hold that the dissolution of a levy or attachment, in faith of a promise to pay the debt, by a third party, is not binding unless in writing. *Nelson* v. *Boynton*, 3 Met. 396.

The truth, perhaps, lies between these extremes, but it is not easy to define its precise limits.

It seems, however, to be admitted upon all hands, that if the new contract is one in which the original debtor is not interested, and from which he derives no advantage, and the benefit accrues, as in the present case, chiefly or altogether to the new party assuming the debt, and the contract is wholly between the new parties, it is to be treated as a new and independent transaction, and not affected by the statute. Upon this ground, although it were to be conceded that the original debt remained the same, the new contract might be enforced, as the original debt would thus virtually become that of the party thus assuming the debt. It is not, of course, extinguished as to the original debtor, but virtually becomes the property of the new party. For whether this is stipulated or not, it is in effect so, since whatever is realized upon it goes to discharge the new promise, *pro tanto*, and if nothing is collected until the new party pays the amount, it then becomes absolutely his.

It is necessary, too, that a parol promise of this kind, to be bind-

irig, should be. absolute, and not dependent on the failure of the debtor to pay, and such this is.

This case seems to us not very different, in principle, from what it would have been if the plaintiff had surrendered a subsisting lien which he held for the security of his debt, either by pledge, or mortgage, or attachment, or levy, and had done this for the benefit of the defendant. In such case it would be strange if he could not recover. All the cases almost hold that he could.

The other claim seems to us to have been already once allowed against the estate of the defendant, in favor of a co-surety, by the plaintiff's consent.

Judgment affirmed.