## ROBINSON *v.* GILMAN.

43  485
68   33

A notice of set-off, setting forth that one R was indebted to G, the defendants' intestate, in two promissory notes therein described ; that L, the plaintiff's intestate, promised and agreed with said G that if said G would not bring a suit on said notes, and summon said L as trustee of said R, he would procure said notes to be settled and paid to said G, and that said G did not bring such suit, nor summon said L as trustee, whereby said L became liable, &c., is sufficient.

A promise to procure a note of another to be settled and paid, is substantially a guaranty of the note, and the damages must be the amount of the note and interest.

The statute of frauds does not apply to a promise to pay the debt of a third person, where, by the receipt of an adequate consideration, such debt has become also the party's own debt.

ASSUMPSIT, brought by Irene Robinson, administratrix of J. L. Robinson, against Nathaniel G. Gilman and others, administrators of N. Gilman, on two promissory notes signed by N. Gilman, payable on demand, and duly transferred by the original payees to J. L. Robinson. The defendants' liability upon these notes was admitted.

A notice of set-off was filed, in which the defendants claimed that one Rollins was indebted to N. Gilman in two promissory notes therein described; that J. L. Robinson, on July 1, 1854, promised and agreed to and with said Gilman, then the holder and owner of these notes, that in case said Gilman would not bring a suit on said notes, and summon said Robinson as trustee of said Rollins, he would pay said notes to said Gilman; also, that in consideration aforesaid, said Robinson promised said Gilman that he would pay to said Gilman a sum equal to the amount of said notes and interest; and also that, in consideration aforesaid, said Robinson promised said Gilman that he would procure said notes to be settled and paid to said Gilman; that said Gilman did not bring such suit, and did not summon said Robinson as trustee, whereby said Robinson became liable to perform his promises aforesaid, &c.

The plaintiff moved to reject the third statement of cause of action in set-off, and the court rejected the same, and the defendants excepted.

The defendants then proved the notes described in the set-off, and called A. Wood, who testified that Rollins failed in business before 1854, and that Rollins claimed that a large sum was due him from Robinson, which was denied by Robinson; that two suits were brought against said Rollins by his creditors, in which Robinson was summoned as his trustee, and that a suit was brought by Rollins against Robinson to recover the debt alleged to be due from Robinson to him; that at the February term, 1854, of this court, when those suits were pending, Robinson came to him (Wood), he being the attorney of the plaintiff in those suits, and desired a continuance of the trustee suits, and that no more questions should be put to him that term in his disclosure therein, which had been commenced before that time; that Wood objected to this, and insisted on completing the disclosure; that Robinson said that if he would grant his request, the matter should be settled up before the next term of the court, and offered to pay a large sum if it was not settled; that Wood consented, and at Robinson's request, as counsel for said creditors, signed and delivered to Robinson the following agreement: "In the action," &c., describing it, "I agree to ask said Robinson no more questions than I feel bound to do as counsel, and if all the questions are answered, and the said disclosure signed, I will place the same in the hands of the clerk of the court, to be by him kept until sworn to at such future time as may be necessary, provided the plaintiff has to try trustees' liability, by the court or jury"; that in the course of the foregoing conversation, Robinson said that all the claims against Rollins would be settled together, and it was said that some of the claims held in Portsmouth against Rollins could be settled for less than their face.

Upon cross-examination as to this conversation, Wood said that it was not the understanding that Robinson should go round and see Rollins' creditors, but that he, Wood, was to get claims as cheap as he could; that he could do so, as he had seen some of the Portsmouth creditors.

Wood also testified, on direct examination, that in the summer of 1854, Gilman called on him to collect his demands against Rollins, and directed him to notify Robinson that he should collect his claims by suit, and summon Robinson as trustee; that he notified Robinson of this, and what Gilman was about to do, and Robinson called on him and said something to the effect that he would call on Gilman and have some arrangement made; that he did not want a suit commenced (the witness said he could not give his exact words); that no suit was commenced; that after this the witness was informed, by either Robinson or Gilman, or both, that the matter had been arranged, and that no suit was to be commenced; that after this, shortly before Robinson's death, Wood saw Robinson as to carrying out the settlement they had agreed on, and asked him "if the matter would be settled, as they had talked about before the September term," and said that if not, he should proceed with the disclosure; that Robinson assured him he had no doubt it would be done; that it would be settled.

On cross-examination, Wood said he thought Gilman did not bring to or leave with him the notes, in the summer of 1854; that he was to notify Robinson, and he thought he was to do nothing further till he saw Robinson, but he could not tell whether he was to proceed or not without further direction, in case Robinson refused to do any thing; that Robinson did not say he would pay the notes, or procure them to be paid, but said he would see Gilman and have some arrangement made about it, without having any suit; or that Robinson said he would see Gilman and see if some arrangement could not be made to prevent bringing a suit; that he had no recollection of Robinson's speaking to him about Gilman's debt after this; or that he did not speak to him about it afterward.

It was admitted that after Robinson's death, Gilman duly presented to the commissioner on Robinson's estate, his claim for the amount of these two notes.

The defendant having rested here, the plaintiff asked the court to rule that the evidence was not competent to sustain the set-off, because of an alleged variance, and because of the statute of frauds, and the court so ruled, and directed a verdict for the plaintiff for the full amount of the notes declared on; to which ruling and direction the defendant excepted.

The parties agreed that the evidence in support of the third cause of action in the set-off, is the same as that stated in the foregoing case, and that if the exception to the ruling of the court, rejecting that part of the notice of the set-off, is sustained, the question whether the promise therein stated is within the statute of frauds, may be determined by the court, as if the same had been raised by the case.

*C. H. Bell*, for the defendants.

In the third cause of action, stated in the set-off, the damages would not be uncertain and unliquidated. They must be the amount of the claim agreed to be paid, and interest.

Under the statute of frauds the test is, what is the chief object

and purpose of the promise, that the promisor shall become surety or guarantor for another's debt, or to subserve or promote some purpose of the promisor's own. In the former case, the promise is within the statute; in the latter, not. 2 Pars. Con. 305; *Nelson* v. *Boynton,* 3 Met. 397; *Allen* v. *Thompson,* 10 N. H. 32. In cases where there is a new consideration moving to the promisor, that is the principal motive and object of the transaction, and the case is not within the statute, as where it is grounded upon means placed by the promisee in the promisor's hands; *Farley* v. *Cleaveland,* 4 Cow. 432; or by the original debtor; *Dearborn* v. *Parks,* 5 Me. 81; *Hilton* v. *Dinsmore,* 21 Me. 410. Of this class are the cases of *Williams* v. *Leper,* 3 Burr. 1886; *Houlditch* v. *Milne,* 3 Esp. 86; *Nelson* v. *Boynton.* It makes no difference that the original debtor continues liable. *Farley* v. *Cleaveland; Allen* v. *Thompson.*

The third cause of action is not within the terms of the statute. Ch. Con. 511; *Bushell* v. *Bevan,* 4 M. & S. 622; 1 Bing. N. C. 103.

*W. W. Stickney,* for the plaintiff.

Mutual debts only can be set off; unliquidated debts are not within the statute. Comp. Stat. 483, sec. 6; *Drew* v. *Towle,* 27 N. H. 412. Here the damages are uncertain and unliquidated. The evidence did not sustain the set-off. The agreement alleged was definite; it means one thing and one thing only, that he would pay the notes. The agreement proved was indefinite; it does not say the same thing, and we say it does not mean the same thing. It does not necessarily nor by any fair construction mean the same thing. It might mean that it should be arranged otherwise than by paying the notes, as by satisfying Gilman that he had nothing in his hands.

The agreements set out in the set-off are within the statute of frauds. Comp. Stat. 459, sec. 9. Gilman retained his notes, and Rollins was still liable to him upon them. The promise alleged and that proved, if any, was to pay Rollins' debt. Such a promise is collateral, and within the statute. 2 Wheat. Sel. 350, 351, 352, and cases cited; 1 Saund. 211, n. 2; *Fish* v. *Hutchinson,* 2 Wils. 94; *Walker* v. *Richards,* 39 N. H. 259; *Cahill* v. *Bigelow,* 18 Pick. 369; *Stone* v. *Symmes,* 18 Pick. 467; *Nelson* v. *Boynton,* 3 Met. 396; *Jackson* v. *Rayner,* 12 John. 291; *Curtis* v. *Brown,* 5 Cush. 488.

This is not like the cases of *Allen* v. *Thompson, Williams* v. *Leper,* 3 Burr. 1886; *Cartling* v. *Aubert,* 2 East 325; *Hilton* v. *Dinsmore,* and that class of cases. In those cases the plaintiff had in his possession the property of his debtor, as security for his debt, and passed it over to the defendant, upon his promise to pay the debt. That would be an assumption of the plaintiff's debt. In this case Gilman had no property or lien as security for his debt, and gave up nothing to Robinson. Nothing took place between them of the nature of a purchase, or assignment of any property, debt, or right. The case, therefore, does not come within the principle of those cases.

The evidence does not show that the chief object of Robinson was

to benefit himself, or to subserve some purpose of his own. Robinson denied all indebtedness to Rollins, and there is no evidence that he was indebted to him, or had in his hands any of his property. But if Robinson's chief object was to avoid being harrassed by a law-suit, that is not enough. It lacks an essential element—a valuable consideration. Gilman's forbearance. to commence a trustee suit was not a sufficient consideration, if it had been in writing. There was no value in it. Forbearance to sue, or the discontinuance of a suit, or the discharge of an attachment, is not sufficient to take a promise not in writing out of the statute, but there must be a transfer of some property, or valuable right. *Stone* v. *Symmes, Nelson* v. *Boynton, Curtis* v. *Brown, Fish* v. *Hutchinson, Martin* v. *Black,* 20 Ala. 309.

The third statement of the set-off comes within the statute. It must mean that he would see the notes were settled and paid by Rollins himself.

BELL, C. J. A brief statement of set-off was, in substance, that in consideration that said Gilman would not bring a suit on two promissory notes due to him from one Rollins, and summon said Robinson as trustee of said Rollins, he would procure said notes to be settled and paid to said Gilman; that said Gilman did not bring such suit and did not summon said Robinson as trustee, whereby said Robinson became liable to perform his promises aforesaid. This statement was rejected, because, as we infer from the argument, it is a claim for uncertain and unliquidated damages, and therefore inadmissible as a set-off.

In *Drew* v. *Towle,* 27 N. H. 427, the case of *Hepburn* v. *Hoag,* 6 Cow. 613, is cited to the point, that the insertion of the word *demands* in the New-York statute of set-off did not authorize a set-off of uncertain damages, their statute being in this respect similar to ours; and the same rule was adopted in that case. The question consequently is, if the claim here set up is a claim for unliquidated damages; and it does not strike us in that light. Though not in terms a guaranty of the two promissory notes described in the set-off, it was in substance such a guaranty—a contract to procure the notes to be paid. The rule of damages, in such a case, can only be the amount due on the notes for principal and interest—an amount to be ascertained by simple computation. Our impression then is, that this set-off should have been admitted.

At a later stage of the case, the court held the evidence introduced incompetent to support the set-off, which had not been rejected, on the ground of variance. This set-off is stated in the same form as that before recited, except in the terms of the promise, which are, first, "that he would pay said notes"; second, "that he would pay to said Gilman a sum equal to the amount of said notes and interest." The evidence relied on to prove the alleged promise is, "that Robinson said he would call on Gilman and have some arrangement made; that he did not want a suit commenced; that no suit was commenced; that after this the witness was informed by either Robinson or Gilman, or both, that the matter had been

arranged." In this evidence there is no proof of a promise to pay the notes, or the amount of them, or to procure them to be settled and paid, as the allegation is in the rejected statement. It is merely that he would have some arrangement made. Subsequently the witness says he saw Robinson and asked him if the matter would be settled as they had talked before the September term, and Robinson assured him he had no doubt it would be done—that it would be settled. In this assurance we find something more nearly approaching a promise to pay the notes, because a promise to settle a note is a promise in effect to pay it. The language used does not necessarily import that he would settle, or cause the notes to be settled. The terms were loose and indefinite, and the question really was, whether the jury, weighing the evidence and the circumstances, could rightfully understand the language to be an engagement to cause the debt to be paid, or to pay it.

On his cross-examination, the witness says that Robinson did not say he would pay the notes, or procure them to be paid, but said he would see Gilman and have some arrangement made about it, without having any suit, or that he would see Gilman and see if some arrangement could not be made to prevent bringing a suit. It is very apparent that Robinson, as well as the witness, understood that he was making an agreement which was to supersede the necessity of a trustee suit against him. In many cases it is not so much the question what terms were used, as what was intended. Where the words are certain, it is generally for the court to construe them; but where the jury must decide what was said, they must also judge what was the meaning of the parties in the language they are found to have used. If the evidence tends to prove an engagement inconsistent with that alleged, and it is capable of no interpretation that can be reconciled with it, the court may pronounce the evidence incompetent on the ground of variance; but where the evidence admits of being understood, in a sense which would support the declaration, and the doubt is whether it is quite sufficient to support the writ, it seems generally more advisable to leave the question to the jury, who are supposed to be more able to judge of the weight of the testimony, as to the facts, than the court. As the jury might perhaps have been persuaded that the meaning of the language used was, that Robinson would pay, or settle the notes, or cause them to be settled, and that it was so understood by the parties, we think that question should have been submitted to the jury.

It is insisted that the promise in question is to pay the debt of another, and is therefore within the statute of frauds. That statutory provision here is substantially the same as in England, and is held to receive the same construction. The promise here is in terms to pay the debt of Rollins. That debt still remains in full force against Rollins, and the promise is therefore collateral to it. It falls within the terms of the statute, and must be governed by it, unless there is some recognized exception within which it may fall.

It is competent for the court to establish exceptions to statutes. expressed in general and sweeping terms, where cases are found to

come within the letter of the enactment, but do not fall within the reason and apparent purpose of the law. A large class of cases is found which fall within the general language of the statute of frauds, which were very easily decided to be exceptions. This class of cases has been very generally recognized in the later decisions, and by the elementary writers, though the principle, by which they seem to us to be governed, is either overlooked or obscurely referred to. As they fall within the terms of the statute, the argument is constantly insisted upon that they must be governed by it.

The exception to which we refer is, that if the debt of another, which a man promises to pay, is also his own debt, the statute has no application. His promise to pay his own debt is not required to be in writing, and the courts have held, with great reason, that if a person, when promising to pay his own debt, thereby engages to pay the debt of another person, this incidental effect shall not render his verbal promise ineffectual. *Nelson* v. *Boynton*, 3 Met. 396. A debtor, for instance, pays the amount of his debt to a third person, who thereupon promises to pay it to the creditor; by the receipt of the money he becomes debtor for it, and his promise to pay it to the creditor is but a promise to pay his own debt, though it will also discharge the original debtor. *Nelson* v. *Boynton*, 3 Met. 396; *Pike* v. *Brown*, 7 Cush. 136; *Todd* v. *Tobey*, 29 Me. 214; *Barker* v. *Bucklin*, 2 Denio 45.

To make the debt his own, it is indispensable that the promisor should have received an adequate consideration from the original debtor, or the creditor. 2 Leigh's N. P. 1031; *Thomas* v. *Williams*, 10 B. & C. 679; *Stevens* v. *Pell*, 2 C. & M. 716; *Alger* v. *Scoville*, 1 Gray 396; *Curtis* v. *Brown*, 5 Cush. 491.

It is not enough that a consideration, which would be good and sufficient to sustain a contract in other cases, that is, "some benefit to the party promising, or some trouble, prejudice, or inconvenience to the party to whom the promise is made," has passed between the parties; nor is it enough that a legal or sufficient consideration has passed between the original debtor and the creditor, at the request of the promisor, to bring a case within this exception. *Curtis* v. *Brown*, 5 Cush. 491.

Thus, to except a promise from the statute, it is never sufficient that the promisee has agreed to allow time to the debtor; *Jackson* v. *Raynor*, 12 Johns. 291; *Smith* v. *Ives*, 15 Wend. 182; *Parker* v. *Wilson*, 15 Wend. 343; *Watson* v. *Randall*, 20 Wend. 201; or to forbear to bring a suit against him for a time; *Simpson* v. *Patten*, 4 Johns. 422; *Smith* v. *Ives*, 15 Wend. 182; *Watson* v. *Randall*, 20 Wend. 201; *King* v. *Wilson*, 2 Stra. 873; *Fish* v. *Hutchinson*, 2 Wils. 94; *Kirkham* v. *Martyr*, 2 B. & Ald. 613; 1 Saund. 211, a; 10 N. H. 32; or has discharged a suit against him; *Nelson* v. *Boynton*, 3 Met. 396; *Tomlinson* v. *Gell*, 6 A. & E. 564; *Rowe* v. *Whittier*, 21 Me. 545; or has released to the debtor any lien; *Mallory* v. *Gillett*, 7 Smith (21 N. Y.) 412; *Fay* v. *Bell*, Lalor 251; or pledge; *Clancey* v. *Piggott*, 2 A. & E. 473; or an attachment; 20 Wend. 184; or levy; *Mercum* v. *Mack*, 10 Wend. 461; *Charter* v. *Beckett*, 7 T. R. 201. And the same is true of any consideration which passes merely between

the original debtor and the promisee, though at the request or for the accommodation of the promisor.

In the following cases the promise has been held binding without writing : (1) Where the debtor has put into the hands of the promisor the amount of his debt; *Hilton* v. *Dinsmore*, 21 Me. 413 ; *Lawrence* v. *Fox* (20 N. Y.), 6 Smith 268 ; *Blunt* v. *Boyd*, 3 Barb. 209, *Harris*, J. ; (2) or transferred to him property equivalent; *Skelton* v. *Brewster*, 8 Johns. 376 ; *Gold* v. *Phillips*, 10 Johns. 412 ; *Farley* v. *Cleaveland*, 4 Cow. 432 ; S. C., 9 Cow. 639 ; *Elwood* v. *Monk*, 5 Wend. 235 ; *Barker* v. *Bucklin*, 2 Denio 45 ; *Pike* v. *Brown*, 7 Cush. 136 ; *Alger* v. *Scoville*, 1 Gray 396 ; *Preble* v. *Baldwin*, 6 Cush. 552 ; *Todd* v. *Tobey*, 29 Me. 224 ; *Dearborn* v. *Parks*, 5 Me. 83 ; *Bird* v. *Gammon*, 3 Bing. N. C. 883 ; *Browning* v. *Stallard*, 5 Taunt. 450 ; *Wait* v. *Wait*, 28 Vt. 350 ; *Olmstead* v. *Greenley*, 18 Johns. 12 ; *Meech* v. *Smith*, 7 Wend. 317 ; *Gardner* v. *Hopkins*, 5 Wend. 23 ; *King* v. *Despard*, 5 Wend. 277 ; *Whitbeck* v. *Whitbeck*, 9 Cow. 266 ; (3) or something of equivalent advantage to himself, as a license to keep a public house ; *Walker* v. *Taylor*, 6 C. & P. 752 ; (4) or where the promisee has transferred or released to the promisor some interest in the property of the debtor ; *Barrett* v. *Trussell*, 4 Taunt. 17 ; *Thomlinson* v. *Gill*, Ambler 330 ; as a lien given by law to the seller for the price of goods sold, but not delivered ; *Fitzgerald* v. *Dressler*, 5 C. B. (N. S.) 893 ; or to a landlord upon the goods of his tenant for rent ; *Williams* v. *Leper*, 3 Burr. 1886 ; *Slingerland* v. *Morse*, 7 Johns. 463 ; *Thomas* v. *Williams*, 10 B. & C. 679 ; *Edwards* v. *Kelly*, 6 M. & S. 204 ; *Bampton* v. *Paulin*, 4 Bing. 264 ; *Stephens* v. *Pell*, 2 C. & M. 710 ; or of a bailee for services ; *Houlditch* v. *Milne*, 3 Esp. 86 ; *Mallory* v. *Gillett*, 7 Smith 412 ; or of an insurance agent on policies in his hands ; *Castling* v. *Aubert*, 2 East 325 ; (5) or where the promisee has released to the promisor and holder of the property an attachment ; *Cross* v. *Richardson*, 30 Vt. 642 ; or a trustee process ; *Cross* v. *Richardson*, 30 Vt. 642 ; (6) or where he has released to the promisor the right to attach property of the debtor ; *Lampson* v. *Hobart*, 28 Vt. 697 ; or to bring a suit in the admiralty to enforce a lien ; *Fish* v. *Thomas*, 5 Gray 45 ; or to bring a trustee suit against a party having funds of the debtor in his hands ; *Cross* v. *Richardson*, 30 Vt. 642 ; the last seeming to us to stand on the same grounds as the cases of *Lampson* v. *Hobart*, and *Fish* v. *Thomas*. The principles upon which these cases were decided were adopted by the superior court in the case of *Allen* v. *Thompson*, 10 N. H. 32, where the plaintiff had obtained the account book of his debtor, as a pledge to secure the debt, and the defendant, in consideration that the plaintiff would deliver the book to one B to collect the demands, verbally promised the plaintiff to pay him the amount due from the debtor, if B could not collect enough for that purpose, and it was held that the contract was not within the statute of frauds. In this case, says *Parker*, C. J., there is not only a new consideration, but one which is distinct from and independent of the debt; and the delivery of the books to B, on the defendant's request, being in effect the same as a delivery to the defendant himself, this new consideration passes between the parties to the new contract. Cases of

this sort are not within the statute, and no writing is necessary to make the contract valid.

In the case before the court, it appears that the plaintiffs' intestate had had large dealings with Rollins, the original debtor, who had failed; and no settlement had been made between them; that Robinson had been trusteed by others, and had been examined at length as to their transactions, and was then unwilling to answer further; the defendants' intestate employed an attorney to commence a trustee suit against Robinson as trustee of Rollins, who conversed with him in relation to the suit; that he was very unwilling to be trusteed, and then gave the assurances relied upon by the defendant. Rollins was no party to the negotiation, and the benefit to be derived from Gilman's omission to sue, was wholly Robinson's. He was assumed by Gilman to have in his hands property or funds for which he might be charged as the trustee of Rollins. If he had such funds, or property, and of sufficient amount to pay Gilman's debt, the waiver by Gilman of his right to commence a trustee suit would form such a consideration for his promise as would make it valid without writing, according to the principles adopted by the authorities. The promise to pay the debt was an admission, or might be regarded as an admission by the jury, that he had property for which he might be chargeable to the amount of these notes, as was held in *Jackson* v. *Rayner*, 12 Johns. 291.

It would seem, then, that the question what was the intention and meaning of Robinson in the assurances which he gave, and the question whether he had funds of Rollins' in his hands, should have been submitted to the jury.

*New trial granted.*