LUTHER CROSS v. ARTEMAS RICHARDSON.

*Variance. Statute of frauds. Consideration.*

A declaration in assumpsit alleged that the plaintiff had instituted a suit in his name against B., and had caused certain personal property to be attached, and certain persons to be summoned as trustees therein; and that the defendant, in consideration that the plaintiff promised to release said property from attachment and discharge the trustees, promised to pay the plaintiff one hundred dollars. The evidence showed that the suit instituted by the plaintiff, was brought in the name of himself and another person, but that he was the sole owner of the claim thereby prosecuted. *Held,* that this difference between the declaration and proof did not amount to a fatal variance.

Cross *v.* Richardson.

*Held* also, that the agreement to discharge the trustees, and their subsequent discharge, constituted a sufficient consideration to support the defendant's promise, even though the nature of the trustees' liability was such that they could not have been made chargeable.

A promise to pay the debt of another, is not within the statute of frauds, and need not be in writing, if it is based upon a valuable consideration independent of the original debt, moving between the parties to the new promise, or even from the original debtor to the promissor; and when such a consideration exists, it makes no difference in regard to the application of the statute, whether the original debtor remains liable or not.

The plaintiff had brought a suit against B., and attached his personal property, and summoned certain persons as trustees therein. The same property had been previously attached on two other suits against B., in which judgment had been rendered against B. and the property was about to be sold on execution, immediately previous to which sale, the defendant, a third person, promised to pay the plaintiff one hundred dollars, in part payment of his claim against B., if he would release his attachment and discharge the trustees, which the plaintiff accordingly did, and the defendant thereupon purchased the property upon the execution sale. B. was not in any way a party to this promise. *Held,* that the defendant's promise to pay the one hundred dollars was not within the statute of frauds, and was not required to be in writing.

ASSUMPSIT. Plea, the general issue, and trial by jury, at the September Term, 1856,—POLAND, J. presiding.

The declaration alleged that the plaintiff had, previous to the 15th of January, 1852, instituted a suit, in his name, against one Milton Brown, and had caused a lot of mill logs to be attached therein, as Brown's property, and had summoned Jairus Rood and Daniel Hinkson in said suit, as trustees of Brown; that on the 15th of January, 1852, while this suit was pending, and before the question of the liability of the trustees had been decided, the defendant, in consideration that the plaintiff promised the defendant to release his attachment and discharge the trustees, promised the plaintiff to pay to him, at the Montpelier railroad depot, lumber of the value of one hundred dollars, in the months of June and July, 1852, which contract the defendant had neglected and refused to perform.

On trial, it was proved that on the 9th of April, 1851, Milton Brown rented to Jairus Rood and Daniel Hinkson, a saw mill, for two years, and Rood and Hinkson agreed to saw for Brown one hundred thousand feet of lumber, as and for the rent of the mill

for that time, provided Brown delivered the logs at the mill for that purpose, within that term; that Rood and Hinkson gave their obligation to Brown to that effect; that prior to the 24th of December, 1851, Rood and Hinkson had sawed thirty-eight or forty thousand feet of lumber for Brown in part performance of this obligation, and that Brown, at that time, had one hundred and fifteen logs in and about the mill, but not sufficient to make the balance of the one hundred thousand feet; that on the 24th of December, 1851, two suits, one in favor of the Vermont Bank, and the other in favor of one Reed, were brought against Brown, by virtue of which, all of his personal property, including said one hundred and fifteen mill logs, was attached; and that on the same day, the plaintiff brought a suit on book, in his own favor, against Brown, by virtue of which he attached all of his real estate only; and that on the same day, the plaintiff brought another suit on book, in favor of the firm of L. & A. A. Cross, against Brown. A. A. Cross was a former partner of the plaintiff, and the plaintiff was the sole owner of the debt; and both debts amounted to three hundred and seventeen dollars  The latter suit was also brought against Rood and Hinkson, as Brown's trustees, and by virtue of it, the plaintiff attached all of Brown's real estate, and also said one hundred and fifteen mill logs, subject to the attachments in favor of the Bank and Reed, and had this trustee writ served on Rood and Hinkson, for the purpose of holding said obligation.

It was not claimed by the plaintiff, that Brown had any other claims against Rood and Hinkson, or either of them, other than the obligation before mentioned. It further appeared that on the 30th of December, 1851, judgments were confessed in the suits in favor of the Bank and Reed, executions were issued thereon, and the same were levied upon said one hundred and fifteen mill logs, which were advertised according to law, and sold on the 15th of January, 1852, in part satisfaction of these executions. The logs were bid off by the defendant.

The plaintiff introduced testimony tending to show that on the 15th of January, 1852, the defendant verbally promised him, in consideration that he would discontinue his suit as to the trustees, and release the logs attached by him, that he, the defendant, would pay the plaintiff one hundred dollars in lumber, delivered at the depot in Mont-

Cross *a.* Richardson.

pelier, in the months of June and July, 1852, in part payment of the plaintiff's debt against Brown, on which said suits were brought; that Homer W. Heaton was the attorney of the plaintiff, and also of the prior attaching creditors, and that the plaintiff then and there agreed to release his attachment on the logs attached, and to discharge the trustees, and directed Heaton to discontinue the suit as to the trustees, and to release the attachment of the logs, and Heaton on the same day told Rood that he was discharged as trustee in said suit, and Rood soon after informed Hinkson to that effect.

It was admitted that the defendant had not delivered any lumber to the plaintiff. No entry was made on the writ, or upon the docket of the county court, of any discharge of the trustees, or any release of the attachment of the logs, and the suit was duly entered upon the docket of the county court, but the trustees did not appear, and no proceedings therein were had against them, and it was continued and was afterwards abated by the death of Brown.

The defendant introduced testimony tending to show that the contract for the discontinuance of the suit as to the trustees, and the payment of one hundred dollars in lumber, was made between the plaintiff and Brown, and that the defendant assumed no liability whatever, other than to say that he would be surety for Brown for the performance by him of this contract.

The defendant insisted that there was a fatal variance between the plaintiff's declaration and the proof relative to the writ on which the logs were attached; that the debt of the alleged trustees was conditional, so that they could not be held as trustees under our statute; that the plaintiff had shown no sufficient consideration for the alleged promise; that the plaintiff had not shown any legal discharge by him of the trustees, or of the attachment of the logs. The defendant also relied upon the statute of frauds.

The court charged the jury that the plaintiff, in order to recover against the defendant, must prove such a promise or undertaking by the defendant as was alleged in the declaration, and also that it was upon the consideration alleged, and that he did in fact relinquish his attachment on the logs, and discharged the trustees; but that if the attachment was in fact released, and the trustees discharged, it was not important that it should be so entered upon the writ; also that if the plaintiff was the real owner of the debt sued in the

name of L. & A. A. Cross, the proof did present a fatal variance from the declaration; that if the plaintiff did in fact release the logs attached on the writs, and also discharge said trustees, it was a sufficient consideration to sustain the defendant's promise; that if the defendant, in consideration of such release by the plaintiff, made an unconditional and absolute . contract or promise to the plaintiff, to pay him one hundred dollars in lumber, and Brown was not a party to such promise at all, then the defendant's promise was an original undertaking, and need not be in writing in order to make him liable ; but that if the contract of the defendant was as he claimed, that Brown contracted to pay the one hundred dollars in lumber, to the plaintiff, and that the defendant only became surety for Brown that he should pay, then his promise was collateral, and would not bind him because it was not in writing. The court also charged the jury that if they found that the defendant was the sole party who assumed the obligation to the plaintiff, to pay one hundred dollars in lumber, that the promise would not be invalid, though it was understood between the parties that Brown was in fact to perform the contract, and draw the lumber.

The defendant excepted to the charge of the court, and the jury returned a verdict for the plaintiff.

*O. H. Smith,* for the defendant.

*T. P. Redfield,* and *Peck & Colby,* for the plaintiff.

The opinion of the court was delivered by

PIERPOINT, J. The first question raised by the defendant upon the exceptions in this case, is, that there is a fatal variance b·tween the allegations in the declaration, and the proof given upon the trial.

It is alleged in the declaration, that the plaintiff had instituted a suit in *his name* against one Brown, and had caused a large lot of mill logs to be attached thereon, as the property of Brown, and had caused Jairus Rood and Daniel Hinkson to be summoned as Brown's trustees. Upon the trial, it appeared from the evidence that the suit was brought in the names of the plaintiff and *A. A. Cross,* who had formerly been co-partners, but that at the time the suit was commenced, the plaintiff was the sole owner of the debt.

The court instructed the jury that if the plaintiff was the real owner of the debt sued in the name of L. & A. A. Cross, there was no variance that was fatal to the declaration, and we think that, in so doing, the county court was entirely correct. The plaintiff, in setting out the proceedings in which the attachment was made, and the persons summoned as trustees, was not required to set them out with the particularity that would have been necessary in setting out proceedings on which the declaration was founded. The plaintiff, in this case, was simply laying the foundation for an allegation of the consideration on which the contract was made, to enforce which this action is brought. It was not necessary that he should have set out the name of the party in whose favor the suit was brought, and, in this case, if the words " *in his name* " were stricken out, the declaration would be perfectly good. All that it was necessary for the plaintiff to allege, was, that property had been attached, and was held, and that certain persons had been trusteed on a legal process issued on a debt due to him, and which he had the right to control, and this would be necessary, only for the purpose of showing that he had the right to enter into the contract set forth, and the power to perform it on his part.

The defendant further claims that the trustees could not legally have been made chargeable in that proceeding, if it had been continued. Whether this is so or not, is a question that we think can not be inquired into in this case. The plaintiff had summoned them as trustees of Brown, and claimed the right to make them chargeable. This claim he abandoned, and discharged the trustees in consideration of the promise on the part of the defendant, and this, we think, is a good consideration for the promise of the defendant, without going into the inquiry as to what might have been the ultimate result of those proceedings.

The objection that the plaintiff did not show a discharge of the trustees, or a release of the attachment of the logs, can not avail the defendant here, as, under the charge of the court, the jury must have found the fact that the plaintiff did discharge both the property and the trustees, according to the terms of the agreement.

The case further shows, that on the writ in favor of L. & A. A. Cross against Brown, the plaintiff had caused to be attached one hundred and fifteen mill logs, subject to two prior attachments, one

in favor of the Vermont Bank, and one in favor of one Reed; that on the 15th day of January, 1852, these one hundred and fifteen logs were sold at sheriff's sale, on executions issued on judgments rendered in the suits in favor of the Bank and Reed, and were then bid off by the defendant. On the same day, the defendant entered into the contract declared on in this case, agreeing, in consideration that the plaintiff would discontinue his suit against the trustees, and release the logs from the attachment thereon, that he, the defendant, would pay the plaintiff one hundred dollars, in part payment of the plaintiff's debt against Brown, on which the suit was brought. This contract, being a verbal one, is claimed by the defendant to be void, as being within the statute of frauds. In determining this question, I shall not attempt to reconcile the various conflicting decisions, under statutes substantially like our own, that have been made in this country, and in England, on the question of what class of contracts do, and what do not, come within the provisions of that statute. Able jurists have pronounced it impossible, and the lawyer who carefully studies these decisions, will find the conviction forced upon him, that the peculiar circumstances of the particular case under consideration often have had more to do with the decision than the plain and obvious meaning of the language of the statute, and the whole current of the decisions taken together furnish a good practical illustration of the idea, that it is not wise in courts to attempt to warp a statute by construction, to meet the supposed equities of a given case. This question has been before our courts in repeated instances, and the rules to be deduced from the decisions in this state, we think, are judicious and sound, and not difficult of application. The doctrine that when there is a sufficient *consideration* to sustain the promise to pay the debt of another, *that* will take the case out of the statute, has not been adopted in this state.

The practical operation of such a rule, as remarked by Chief Justice REDFIELD, in *Lampson* v. *Hobart's Estate*, 28 Vt. 697, would "virtually repeal the statute." The promise must not only be based on a valuable consideration, but it must be a consideration moving between the promissor and promissee, and from which the promissor is to derive some actual or anticipated benefit, in view of which the promise is made. When this is the case, it becomes a

new and independent contract, existing entirely between the parties to it, and with which the original debtor has no other connection or interest, except that he may be benefited by its performance. It is then a promise to pay the debt of another person, not collateral to the debt, or for the benefit of that other person, but in view and in consideration of the benefit to be derived by the promissor therefrom. In such a case, the existing relations between the original debtor and creditor need not necessarily be changed, or the debt cancelled, or in any manner affected by such promise; whether they are, or not, must depend upon the terms of the new contract, but in either event, it can make no difference with the operation of the statute. But in cases where the consideration for the promise affects only the original debtor or creditor, and the promissor derives no advantage from it, then it is necessary that the original debt should be affected, so as to change, or discharge, the liability of the original debtor. If the contract is such that it substantially transfers the debt to the promissor, either by its terms, or in its legal operation, then it comes within the foregoing rule of a consideration operating to the advantage of the promissor, and is not within the statute.

If its effect is to discharge the original liability, then it is not a promise to pay the debt of another, but it is a promise, by which the debt of another is in fact paid. All the authorities agree that such a case does not come within the statute.

It is apparent that unless the statute is to be judicially repealed, the consideration for the promise must be of a peculiar character, for if the promise is without consideration, it is void at common law; if it is a promise to pay the debt of another, no action can be maintained upon it under the statute, unless it is in writing; if then it is taken out of the statute, it must be by force of the peculiar nature of the consideration on which it is based. That consideration must be not only sufficient to support the promise, but of such a nature as to take the promise out of the statute; and that requisite, we think, is to be found in the fact that it operates to the advantage of the promissor, and places him under a pecuniary obligation to the promissee, entirely independent of the original debt; which obligation is agreed to be discharged by paying that debt. The contract may be of such a character that the payment will impose no legal

or moral obligation on the original debtor to repay the money; indeed, the consideration may move from the original debtor himself. These views, we think, are in accordance with the principles involved in *French* v. *Thompson's Estate*, 6 Vt. 54; *Anderson* v. *Davis*, 9 Vt. 136; *Sinclair* v. *Richardson*, 12 Vt. 33; *Wait* v. *Wait*, 28 Vt. 350; and *Lampson* v. *Hobart's Estate, id.* 697.

In the case under consideration, the discharge of the trustees, and the release of the property from attachment, was a sufficient consideration to support the promise. Was it then of such a character as to take the contract out of the operations of the statute?

We think it is apparent from the fact set forth in the bill of exceptions, that this contract was entered into prior to the sale of the logs on the executions. It is stated to have been made on the same day, and to suppose it to have been made after the sale, would be to suppose that the parties made a contract, as to these logs, which both of them knew to be an idle ceremony. The object of the defendant in making this promise, evidently, was to remove the claim of the plaintiff upon these logs, and upon the trustees, that he might become the purchaser of the logs, without competition on the part of the plaintiff, and that Rood and Hinkson should be released from the embarrassment of the trustee process, so that they might continue to operate the mill. The advantage to be derived by the defendant from this arrangement, was the true consideration of his promise. The original debtor was no party to it, but the contract was entirely independent of him, and upon a consideration wholly disconnected from his debt. The fact that he is to derive a benefit from the performance of the contract, does not bring it within the statute. The contract must stand on the same ground as though it was for the payment of one hundred dollars absolutely, without any reference to its application on the debt of Brown.

The result is, the judgment of the county court is affirmed.