Fullam *v.* Adams.

## SEWELL FULLAM *v.* WARREN ADAMS.

### *Statute of Frauds. Contract. Attorney.*

The defendant retained the plaintiff as his attorney in any litigation that might grow out of a conveyance to him by his brother, John Adams, who had failed; and in consideration of such retainer promised the plaintiff verbally to pay him one-half of a debt of three or four hundred dollars, due. to the plaintiff from said John, and also promised to pay the plaintiff for his services, if he performed any. *Held,* That the defendant's promise to pay the debt of John Adams to the plaintiff was a promise within the statute of frauds, and not being in writing could not be enforced by action. That a verbal promise to pay the debt of another, where the original debt still subsists, is never legally binding, except where the promissor has received the funds or property of the debtor for the purpose of being so applied, so that an obligation or duty rests upon him, as between himself and the debtor, to make such payment, whereby his promise, though in form to pay the debt of another, is in fact a promise to perform an obligation or duty of his own.

A retainer of an attorney is a sufficient consideration to support a promise to pay such attorney a debt due him from another, if such promise be in writing.

ASSUMPSIT. Plea, the general issue, and trial by jury, Windsor County, May Term, 1863, BARRETT, J., presiding.

The plaintiff offered to prove by parol that the defendant applied to him, in February, 1851, and proposed to employ him as a lawyer to assist the defendant in all the suits which might grow out of the defendant's purchase of a farm and some personal property of his brother, John Adams, who had failed in business. That the defendant told the plaintiff if he would engage for him as his counsel in such suits as the defendant was interested in, he, the defendant would pay the plaintiff one-half of what said John was owing the plaintiff, amounting to some three or four hundred dollars, and reasonable fees and charges for his services. To this the plaintiff acceded. The defendant objected to proving by parol the agreement to pay one-half of the John Adams debt, it being within the statute of frauds. This objection was overruled by the court and the parol testimony admitted tending to prove the agreement,— to which the defendant excepted. Verdict for the plaintiff.

*John F. Dean* and *J. A. Wing,* for the defendant, maintained that the defendant's promise was within the statute of frauds and should have been in writing, and cited, besides cases cited in the opinion, *Jackson* v. *Rayner,* 12 Johns. 291 ; *Britian et al.* v. *Thrailkill,* 5

Jones' N. C. 329; *Mills* v. *Wyman*, 3 Pick. 207; *Chadler & Wife* v. *Davidson*, 6 Blackford, Ind. 367; *Rogers* v. *Rogers*, 6 N. C. 3; *Harrington* v. *Rich*, 6 Vt. 666; *Sinclair* v. *Richardson*, 12 Vt. 33; *Newell* v. *Ingraham*, 15 Vt. 422; *Smith* v. *Hyde*, 19 Vt. 54.

*Sewell Fullam*, plaintiff, *pro se.*, maintained that the defendant's promise was an original undertaking, and not within the statute of frauds, and cited *Cross* v. *Richardson*, 30 Vt. 641; *Skelton* v. *Brewster*, 8 Johns. 293; *Harrison* v. *Sawtel*, 10 Johns. 242; *Gold* v. *Phillips*, 10 Johns. 412; *Chase* v. *Day*, 17 Johns. 114; *Olmstead* v. *Greenly*, 18 Johns. 12; *Conkey* v. *Hopkins*, 17 Johns. 113; *Gardiner* v. *Hopkins*, 5 Wend. 23; *Chapin* v. *Merrill*, 4 Wend. 657; *Packard* v. *Richardson*, 18 Mass. 122; *Templeton* v. *Bascom*, 33 Vt. 132.

POLAND, Ch. J. The defendant retained the plaintiff as his attortorney, in any litigation that might grow out of a conveyance to him of certain property by his brother, John Adams, (who had failed); and, in consideration of such retainer, promised the plaintiff, verbally, to pay him one-half of a debt of three or four hundred dollars, due to the plaintiff from the said John, and also promised to pay the plaintiff for his services if he performed any. The defendant claims that his promise is supported by no legal consideration, and therefore does not bind him. It has long been the practice for members of the bar to receive fees for merely being retained by clients, and to charge for such retainers, without any special contract or promise to pay; and it has never been doubted in this state, to our knowledge, that lawyers were properly and legally entitled to make such charges. The amount of such charges has of course varied greatly, depending upon the amount and importance of the matter in controversy, and the professional standing of the counsel. Where, upon such retainer, the client expressly promises to pay a certain sum, we think it cannot be said to be a promise without consideration, and that such consideration must be regarded as sufficient and adequate to the extent of the sum he has promised to pay.

The important question in the case is, whether this promise bound the defendant, it not being in writing. It was in terms a promise to pay the debt of another, or a portion of the debt of another. The liability of John Adams for his debt to the plaintiff still subsisted precisely to the same extent as before. The plaintiff insists, that in

substance the defendant's promise was to pay him a certain sum for his retainer, absolutely, to be determined in amount merely, by reference to his debt against John Adams; that if John Adams should himself have paid the plaintiff the full amount of his debt, the plaintiff would still be entitled to recover the agreed price for his retainer from the defendant; and, that if the defendant first paid the plaintff one-half the amount of John Adams' debt, such payment would not operate to extinguish any part of the debt, as between the plaintiff and John Adams, but the plaintiff would still have the right to collect the whole debt from John. If the facts proved on the trial will justify this construction, then the case is clear of any question under the statute of frauds; it was no promise to pay the debt of another, but to pay his own debt. But, in our view, it is clear, this was not the real transaction between the parties, but it was in effect and purpose a contract by the defendant to guaranty, or become responsible for the payment to the plaintiff of one-half his debt against John Adams; that the defendant's liability to pay depended upon the continued existence of John Adams' debt, and if John Adams himself paid his full debt to the plaintiff, it would extinguish all claim of the plaintiff against the defendant; and if the defendant, under his contract with the plaintiff, had paid him one-half the amount of John's debt, it would operate to prevent the plaintiff from collecting of John more than the half remaining unpaid.

The defendant's promise to the plaintiff was, therefore, a promise to pay a pre-existing, and still subsisting, debt of another, founded upon the consideration of the plaintiff's retainer, by the defendant, as his counsel in his own personal matters; which we regard as sufficient to sustain the contract, if in writing.

The question, whether the defendant's promise was valid without writing, opens the door to an examination to an almost endless extent of judicial discussion and determination, both in England and this country, and we can hardly hope to do more than to add another decision to the long line, which may serve to perplex future explorers into the true extent and meaning of this section of this ancient statute. There are some things that have always been undisputed in all the cases arising under it; one is, that the promise must be supported by a valid consideration. This was so before the

statute, and the statute added the further requirement that the promise should be in writing. In the case of a promise to pay a preexisting debt of another, it has always been held that there must be a new or further consideration to support it; that the original consideration upon which the debt rested was not enough, and could not be used to support the new promise.

But it was never considered necessary that the new consideration should be one that was beneficial to the promissor, in order to make his promise binding, if in writing; if it was, or might be detrimental to the promissee, it was enough, like forbearance of his debt.

So too, the promises mentioned in this section of the statute, are those of suretyship, or guaranty for the debt of another, which still subsists against him; for if the effect of the new promise or contract be to discharge the original debt, the promissor becomes the sole debtor, and there is no debt of another to which his promise is collateral, therefore such promise is not within the purpose and spirit of the statute, and need not be in writing. In the present case, as before said, we regard the defendant's promise as one for the payment of a pre-existing and still subsisting debt of another, and therefore within the terms of the statute; still it does not follow that he is not bound by it, though not in writing, for it is well established that a parol promise to pay the debt of another, which still subsists in full force against him, in favor of another, may be binding upon such promissor.

This statement seems to be almost a direct contradiction of the express language of the statute; but it is established by repeated decisions in England, in the American courts generally, and by several decisions in this state. The decisions are contradictory enough, as to what is necessary, in order to make such a promise binding, but all agree that there may be a state of facts which will make it so. What is that state of facts which will take a parol promise to pay the still subsisting debt of another out of the reach of the statute? and do the facts of the plaintiff's case make it one of that class? Many attempts have been made by different judges and law writers, to lay down a precise rule or definition by which it could be at once determined, whether such promise was or was not within the statute, but these rules have given rise to the same conflict of debate

Fullam *v*. Adams.

and decision which attended the original rule of the statute itself. In an early decision in this country, *Leonard* v. *Vredenburgh*, 8 Johns. 29, Chancellor KENT, then Chief Justice, divided the cases under this section of the statute of frauds into three classes.   His third class, in which the plaintiff claims to include his case, is as follows : " Where the promise to pay the debt of another arises out of some new consideration of benefit or harm moving between the newly contracting parties.   This class he says are not included within the statute.   The very general language in which this rule is laid down, and the great authority given to it by the high character of its author, induced many decisions in this country which were directly in the teeth of the statute, in both its letter and spirit.   Indeed, at one period the decisions seemed to go to the extent of holding, that if the new promise was suported by an adequate legal consideration, it was not within the statute, which was just equivalent to denying the statute any force whatever.   In *Farley* v. *Cleveland*, 4 Cow. 432, Ch. J. SAVAGE attempted an improvement on this definition, so as to make it more precise and accurate.   Speaking of Chancellor KENT's third class, he says : " in all these cases founded on a new and original consideration of benefit to the defendant, or harm to the plaintiff, moving to the party making the promise, either from the plaintiff or original debtor, the subsisting liability of the original debtor is no objection to a recovery."   In a very recent case in the same state in the court of appeals, this subject received great consideration : *Mallory* v. *Gillett*, 21 N. Y. 412.   The plaintiff had made repairs to the amount of $125., upon a canal-boat belonging to one Haines, and had the boat in his possession, under his lien for the repairs, and refused to surrender the boat until the amount due him for the repairs was paid.   In consideration that the plaintiff would deliver up the boat to Haines, the defendant promised by *parol* to pay the plaintiff for the repairs made on the boat.   The action was brought on this promise, and the defendant claimed he was not bound, because his promise was not in writing.   Five of the judges held the promise not binding, because not in writing, while the other three held, that under the decisions in that state, following the rule laid down by Chancellor KENT, the promise of the defendant was not within the statute, and that the defendant was legally bound,

Fullam *v.* Adams.

The majority held the defendant's promise to be not binding without writing, because the consideration for it (the surrender of the plaintiff's lien on the boat) was to Haines his debtor, and so was not one that inured to the advantage of the defendant. The majority opinion was delivered by Comstock, Ch. J., and contains a most able and exhaustive examination of the cases on this branch of the statute.

He endeavors also to reduce the promises for the debts or defaults of others, which are, or are not, within the statute, to classes. Among those not within the statute, he brings the following:—"Where, although the debt remains, the promise is founded on a new consideration, which moves to the promissor. This consideration may come from the debtor—as when he puts a fund into the hands of the promissee, either by absolute transfer, or upon a trust to pay the debt,—or it may be in his hands charged with the debt as a prior lien, as in the case of *Williams* v. *Leper*, and many others. So the consideration may originate in a new and independent dealing between the promissor and creditor, the undertaking to answer for the debt of another being one of the incidents of that dealing. Thus A., for any compensation agreed on between him and B., may undertake that C. shall pay his debt to B." In this opinion Ch. J. Comstock endeavors to show, that both upon principle and by a great majority of adjudged cases in New York, and elsewhere, where a creditor has a security of any sort in his hands for the payment of his debt, and surrenders it to his debtor upon the promise of a third person to pay his debt, such promise is within the statute, and not binding unless made by writing; but if such security be surrendered to the party making the promise, for his own benefit and advantage, the promise, though by parol, is not within the statute, and binds the promissor. Though there are adjudged cases to the contrary, it is shown clearly, as we think, that by the great majority of decisions, these conclusions of the majority of the court are fully sustained. But wherein consists the difference in the two cases, so that in one the parol promise is binding, and not in the other? The promise in both is to pay the debt of another, for which he still continues liable. The surrender of the security is equally a detriment to the creditor in both cases, and in either case forms an

ample consideration for the new promise, if in writing. An examination of some of the cases will, we believe, develop the reason, and the true principle upon which the distinction is made. It has been often decided, that where the purchaser of property promises to pay the price to a creditor of the vendor, such promise is binding, though not in writing, and the vendor still remains liable for the debt: *Barber* v. *Bucklin*, 2 Denio, 45 ; *Dearborn* v. *Parks*, 5 Greenl. 81 ; *Farley* v. *Cleveland*, 4 Cow. 432, are samples of this class of cases. In some of these cases it is said, the promise is not within the statute, because in substance it is a promise to pay the promissor's own debt for the purchased property, and that although the fulfilment of his promise to pay his own debt, has the effect to pay the debt of another, it does not bring his promise within the statute, as this effect is incidental, and not the principal object and purpose of the promise. And where a debtor transfers funds or property to another for the purpose of paying his debt, and the person thus holding the debtor's funds or property promises the creditor to pay his debt, such promise is held good, though not in writing. This was held in this state in *Wait* v. *Wait*, 28 Vt. 350, and has also been decided in a subsequent case in Rutland county not yet reported, and many cases in other states support the same doctrine. We apprehend the true principle why the promise to the creditor is valid without writing, is the same in both these classes of cases. In both, the party making the promise, holds the funds of the debtor for the purpose of paying his debt, and as between him and the debtor, it is his duty to pay the debt, so that when he promises the creditor to pay it, in substance he promises to pay his own debt, and not that of another ; and though the debtor still remains liable for the debt, his real relation is rather that of a surety for the party whose duty it is, and who has promised to pay his debt, than of a principal for whom the other has become surety or guarantor. He holds a fund in trust, under a duty to pay it to the creditor, and he makes an express promise to perform it. In such case, it is no violation of the spirit of the statute, to hold such promise an original one, and not necessary to be in writing. The cases which decide that where a creditor holds a security for his debt, and surrenders it to a third person, for his own benefit, upon his promise to be an-

swerable for the debt, stand really upon the same substantial principle. The early case of *Williams* v. *Leper*, 3 Burr. 1886, is the starting-point of all this class of cases, and the decision seems to be put exactly on this ground.

Taylor was the tenant of the plaintiff, and in arrear for his rent; he was insolvent, and conveyed all his effects for the benefit of his creditors; they employed Leper, the defendant, as a broker to sell them, and he advertised them for sale. On the morning of the sale the plaintiff came to the house to distrain the goods for his unpaid rent, whereupon the defendant promised the plaintiff if he would not distrain he would pay the rent due him. The plaintiff desisted from distraining, and allowed the defendant to sell the goods. It was held by the court, that his promise to pay the plaintiff was valid, though not in writing. Lord MANSFIELD said : " The *res gestœ* would entitle the plaintiff to his action against the defendant.* The goods are the fund ; Leper was a trustee for all the creditors, and was obliged to pay the landlord, who had the prior lien." The decision went clearly upon the ground, that as the plaintiff had the prior lien on the goods for the payment of his rents, and surrendered it to the defendant on his promise to pay the rent, it became a trust in his hands for the payment of the plaintiff's debt, and his promise was not that of a surety or guarantor for Taylor, but for the performance of his own duty. This case was followed by *Castling* v. *Aubert*, 2 East, 325. The plaintiff was under liabilities for one Grayson, and held certain policies of insurance as security therefor. The defendant was the agent of Grayson for the management of his insurance affairs, and, a loss having happened, the defendant needed the policies in order to get the money, and applied to the plaintiff to surrender them to him, which the plaintiff did upon the defendant's promise to pay the acceptances for which the plaintiff was liable. This promise was not in writing. It was claimed that under the statute of frauds, the promise was not binding, but the court held that it was, and said it was rather a purchase of the securities which the plaintiff held in his hands, and that the defendant had in contemplation not principally the discharge of Grayson, but the discharge of himself. *Edwards* v. *Kelly*, 6 M. & S. 204, and many other English cases, follow in the same line of decision, and

the substance of all of them is that in such case the party making the promise is liable, because by the arrangement he becomes the holder of a fund or security which was appropriated to the payment of the debt, and clothed with a duty or trust in respect thereto, which the law will enforce in favor of the party to whom the promise is made. In all this class of cases the promise is upon a new consideration which moves to the promissor, and, therefore, they come within all the definitions or rules before mentioned; but is it true that in every case where there is a new consideration moving to the promissor, the promise to pay the debt of another is good, without writing? Especially, is the statement quoted before from Ch. J. Comstock, "that A., for any compensation agreed on between him and B., may undertake that C. shall pay his debt to B.," good without writing? That is the precise proposition the plaintiff claims to sustain in this case, and the case put by him in argument, of a parol promise to pay, or to guaranty the payment of a debt of another for a hundred· or a thousand dollars, in consideration of ten dollars paid the promissor by the creditor, illustrates the proposition exactly. It is a new consideration moving between the newly-contracting parties, and for the benefit of the party making the promise, and hence clearly within the terms of the rule. But we have found no case among the multitude˙ on the subject, which supports the proposition to this extent; and where the promise is a mere contract of guaranty, we think it comes within the statute, though a distinct consideration therefor be paid directly to the party making the promise.

The subject is well illustrated by the decisions in the case of factors selling goods under a *del credere* commission, where the agreement is by parol. It was at one⌣time held, that the factor's agreement to guaranty his sales, was not binding unless in writing; that it was a promise within the statute of frauds. But the contrary is now firmly established both in England and this country: *Couturier* v. *Hastie et al.*, 16 Eng. L. & Eq. 562; *Wolff* v. *Koppel*, 5 Hill, 458; *Swan* v. *Nesmith*, 7 Pick. 220. If it be true that a new consideration moving directly between the parties, and to the promissor, is sufficient to sustain a verbal promise to pay the debt of another, it would seem there never could have been any question about the

statute of frauds, for the payment of the additional per cent. for the guaranty would always have been sufficient. But the cases which hold the factor bound by his verbal agreement are placed upon no such basis. In the case from 5 Hill, COWEN, J., says : "The implied promise of the factor is merely that he will sell to persons in good credit at the time, and in order to charge him negligence must be shown. He takes an additional commission, however, and adds to his obligation that he will make no sales except to persons absolutely solvent ; in legal effect, that he will be liable for the loss which his conduct may bring upon the plaintiff, without the *onus* of proving negligence. The merchant holds the goods, and will not part with them to the factor without this extraordinary stipulation, and a commission is paid to him for entering into it. What is this after all but another form of selling the goods ? Its consequences are the same in substance. Instead of paying cash, the factor prefers to contract a debt or a duty which obliges him to see the money paid. The debt or duty is his own, and arises from an adequate consideration." Baron PARKE, in the English case cited, upholds the parol promise of the factor upon substantially the same ground with Judge COWEN, and he adds : " Doubtless, if they had for a per centage guaranteed the debt owing, or performance of the contract by the vendee, being totally unconnected with the sale, they would not be liable without a note in writing signed by them ; but being the agents to negotiate the sale, the commission is paid in respect to that employment." This is a clear denial of the proposition, that a new consideration moving from the creditor to the guarantor takes the guaranty out of the statute, and all the cases proceed upon the ground, that the factor's promise in such case stands upon the consideration of his own duty and obligation, growing out of his employment. In the case of *Anderson* v. *Davis*, 9 Vt. 136, Lamb had contracted to erect a building for the defendant, and had partially completed it when he was taken sick, and the work ceased. The plaintiff had worked for Lamb on the building, and, in consideration that the plaintiff would go on and· complete the building, the defendant promised to pay him for his future services, and also for his previous labor. It was held that this promise to pay for the previous labor, done for Lamb, was not binding, not being in

writing.   It was conceded, that the consideration was sufficient to sustain the promise, provided it had been in writing.   But here was a new consideration moving from the promissee to the promissor.   In *Loomis* v. *Newhall,* 15 Pick. 159, the plaintiff had boarded the defendant's son, for which the son was liable; and in consideration that the plaintiff would continue to board the son, the defendant promised the plaintiff to pay him for both the past and future board.   It was held that the promise to pay for the debt of the son for the past board was within the statute, and therefore not binding.   In this case also it was conceded by the court that the consideration was ample to sustain the promise for the whole, if it had been in writing.   This was a case of a new consideration between the parties, the furnishing future supplies to the son at the defendant's request.   The court further decided in this case, that although the defendant's promise to pay for the future supplies would be good without writing, still as the contract was entire and not binding for the debt already accrued, it was invalid also for the future.   In the case of an illegal contract, or one founded on an illegal consideration, this was undoubtedly correct, but parol contracts or promises within the statute of frauds are not illegal or void; the statute simply takes away the right to enforce them by suit.   This was held differently in *Anderson* v. *Davis*, and rightly, as we think.

These cases are cited to show that it is not true that in every case, where the promise is founded upon a new consideration moving wholly between the parties to the guaranty, the promise is taken out of the statute.   It depends upon the transaction itself, the general object and purpose, or, as Lord MANSFIELD expressed it, on the *res gestœ.*   If the leading purpose and object be to guaranty, or become responsible for the payment of a third person's debt, then the promise is within the statute although it may be founded upon a consideration directly between the parties.   It is almost impossible to imagine a case where a promise to pay the debt of another, for which he remains liable, upon a consideration moving wholly from the creditor and in which the debtor has no concern; where the leading object and purpose can be any other than to make the promissor the surety or guarantor of the debt.   In such case no duty or

obligation is imposed on the promissor as between him and the debtor ; his obligation is wholly to the creditor, and rests entirely upon his promise or contract with him. It is scarcely reasonable to suppose one would part with a consideration belonging wholly to himself, where the value was equal to the amount of a debt due him from another, even to obtain the promise of a third person to pay it. If the consideration for the promise is much less in value than the amount of the debt, it would afford a strong presumption that reliance was placed to some extent upon the chances that the debtor would pay it himself, and therefore the promissor not be called upon at all upon his undertaking. But the strong reason given why it is not a guaranty and a collateral promise is, that it should be treated as a purchase of the consideration, and when payment is made it is really paying for property purchased, or whatever else the consideration may be. But if so, then when he has made the payment he has only paid for what he received of the creditor, and the debt is just as much due as before, and may be collected by the creditor of the debtor, and neither would payment of the original debt by the debtor afford any protection to the party making the new promise from paying for what he has purchased of the creditor. But if the parties in entering into the new contract really contemplate a sale of property from one to the other, or the performance of services by one for the other for a stipulated price to be paid, it is scarcely comprehensible why the contract should assume the form of a promise to pay the debt of another, and especially where the amount of such debt is unknown and unliquidated. As stated earlier in this opinion, if this was the real transaction it would have nothing to do with the statute, because really it would have nothing to do with the debt of another. But in such case the purpose and intent is clear to enter into a contract to guaranty or answer for the debt of another, and what is paid or done as a consideration is for that purpose simply, and to call it a purchase and sale is a simple perversion of those terms. If the real substance of the promise be to perform some duty or obligation of the party making the promise, it is not within the statute, though in form it is a promise to pay another's debt, and the result of its performance may effect the payment of the debt of another. And we believe it will be found

that in all the cases now regarded as sound, where it has been held that a parol promise to pay the debt of another is binding, the promissor held in his hands funds, securities or property of the debtor, devoted to the payment of the debt, and his promise to pay attaches upon his obligation or duty, growing out of the receipt of such fund.

In support of these views we refer further to *Nelson* v. *Boynton*, 3 Met. 396 ; *Kingsley* v. *Balcom*, 4 Barb. 131, and Browne on Statute of Frauds, ch. 10. In the present case we regard the defendant's promise as essentially a contract of guaranty of one-half the amount of John Adams' debt, and though founded upon a sufficient consideration moving directly to the defendant, it was a promise within the statute, and not being in writing, not enforceable at law. Where a promise to pay the debt of another is founded upon the consideration of property sold by the debtor to the promissor, to be paid for to his creditor, if payment is not made accordingly, and the debtor is compelled to pay his debt, he is entitled to have pay for his property sold. If he places property or funds in the hands of another to pay his debt, and it is not done, he is entitled to his property again. If a creditor holds securities of his debtor of any sort for the payment of his debt, and surrenders them to a third person upon his promise to pay the debt, and he fails to do so, and the debtor pays his own debt, he is entitled to have his securities returned to him, or applied for his benefit. In this case the defendant received nothing, and held nothing in his hands, for the payment of John Adams' debt. If John Adams paid the debt to the plaintiff, the defendant was under no liability to either of them for anything he had received. His obligation to the plaintiff began with, and rested solely upon his promise. It is a naked promise to pay the debt of another, and within the statute, if one can be, where it is founded on a new consideration moving to the promissor, which we have tried to show may be the case. It is claimed that several decisions in this state support the plaintiff's right to recover in this case, and it is true that in some of our cases the same general language is used that has already been referred to ; that when the promise is founded upon a new consideration moving between the

parties, it is not within the statute; but an examination of the cases, we believe, will show them all to have been correctly decided, even in the view we have taken of the principle governing such cases. *French* v. *Thompson*, 6 Vt. 54: The plaintiff had been guardian of one Hurlbut, and held securities and property belonging to his ward. He resigned his guardianship, and the defendant was appointed guardian in his place. The defendant promised the plaintiff, that if he would deliver to him the securities and property of his ward, he the defendant would pay the plaintiff's account for his payments and expenditures while acting as guardian. The promise, though not in writing, was held good. *Lampson* v. *Hobart*, 28 Vt. 697: The plaintiff and defendant were creditors of the same debtor. The plaintiff was about to attach the debtor's property, when the defendant promised, that if the plaintiff would desist making his attachment, and allow the defendant to attach the property upon his debt, he would pay the plaintiff's debt. The plaintiff thereupon desisted, and allowed the defendant to take the debtor's property. The court treated this as a case where the plaintiff had obtained a security for his debt, and in consideration of its surrender to the defendant, he made the promise. The promise was held binding, though not in writing. If there was any error in the case, it was in treating the plaintiff as having already obtained a security on the property, but that does not vary the principle of the decision. *Cross* v. *Richardson*, 30 Vt. 641: The plaintiff had an attachment on certain logs of his debtor Brown, and had trusteed certain debtors of Brown. In consideration that the plaintiff would release his attachment on the logs, and release the trustees, so that the defendant could bid off the logs at a sheriff's sale, and have them sawed by the trustees, he promised the plaintiff to pay him $100. on Brown's debt. This promise was held good, though by parol merely.

*Templeton* v. *Bascom*, 33 Vt. 132: The plaintiff had a debt against the defendant's father, who had died, leaving ample property for the payment of his debts. The defendant was the sole heir to his father's estate, and all the property was in his hands In consideration that the plaintiff would not proceed to take out

administration, and enforce payment of his debt out of the estate, the defendant promised to pay it. This was held not within the statute, though by parol. In this case the plaintiff not only relinquished his right, in favor of the defendant, to the funds in his hands, to which he had the right to look for payment, but his omission to proceed against them operated as a discharge of the debt itself.

But in all these cases the plaintiff surrendered, and the defendant received, a fund or a security charged with the payment of the plaintiff's debt, and all come within the class of *Williams* v. *Leper*, and *Castling* v. *Aubert*, and upon the same ground with those were properly held not to fall within the statute. We know of no case in this state where the parol promise of one to pay the debt of another, has been upheld upon any other consideration than the receipt of some fund or other security, either from the debtor or creditor, charged with the payment of the debt, so that a trust or duty was created thereby to pay the debt, and so that in making the payment of the debt he was really fulfilling an obligation of his own. When carried further than this, the statute is really repealed. If it be true, that "A., for any compensation agreed on between him and B., may undertake that C. shall pay his debt to B.," as laid down by Ch. J. COMSTOCK, and such promises held good without writing, then truly the statute of frauds and its labor have been in vain. If parol evidence can be made sufficient to charge one man with the payment of another's debt, however large, by proving a promise, and a consideration of a pepper-corn, or a day's work, or some other of equal value, every beneficial purpose of the statute is gone. No better scheme could have been devised before the days of the statute of the 29th of Charles the 2d, to establish a claim against a man by false testimony, than this would be. The statute was passed by reason of the strong temptation to make others responsible for the debts of irresponsible and insolvent debtors, and the facility afforded by the testimony of corrupt witnesses to establish such contracts, if allowed to be proved by verbal testimony; hence, the evidence of any such promise by a third party was required to be in writing. But if the statute can be avoided by find-

Fullam *v*. Adams.

ing a corrupt witness to swear to such promise, and in addition to anything paid or done which in law could constitute a consideration to the party himself, the use for such witnesses is by no means at an end. The decisions have gone quite far enough, in holding such parol promises binding when made upon the consideration of having received, or holding the debtors funds or property for that purpose.

Judgment reversed, and a new trial granted.