## LANG *v.* HENRY.

An averment that the defendant, in consideration that the plaintiff, to whom a third person was indebted, would forbear to collect his debt, promised to pay it, is to be taken as referring to forbearance to collect of the original debtor; it therefore describes a collateral undertaking, upon which no action can be sustained without proof of a written note or memorandum of the agreement.

It is as much a violation of the statute of frauds to prove by parol testimony an essential part as the whole of an agreement, of which the statute requires a note or memorandum in writing.

The rule of law which authorizes the maintenance of an action upon a verbal promise to pay the debt of another, made upon a new and independent consideration, moving between the plaintiff and the defendant, for the purpose of conferring a benefit not upon the original debtor, but upon the promisor, considered, and *held* inapplicable to the existing facts.

A promise to pay the workmen in a shop, made as a part of the consideration for the purchase of the stock in the shop from the original debtor, which does not name the workmen, or mention the sum due to each, or the gross sum due to all of them, though not invalid because the consideration moves wholly from the original debtor, if subsequently assented to by the workmen, is insufficient to entitle them to recover the respective sums due them.

Assumpsit, by Charles E. Lang against John J. Henry, on the common counts, with a special count, alleging that, on September 25, 1869, one Charles A. Lang was indebted to the plaintiff in the sum of $200, and

the defendant, in consideration that the plaintiff would forbear to collect the claim, promised to pay him that sum; that the plaintiff did forbear, and the defendant thereupon became liable to pay.

It appeared that before August 21, 1869, Charles A. Lang, a son of the plaintiff, had been engaged in the manufacture of shoes at Boscawen; that on that day the defendant, who was a commission merchant in Boston, purchased his entire stock, and took a bill of sale of it, as follows: "Boston, Aug. 21, 1869. John J. Henry to C. A. Lang, Dr., for the following goods at Boscawen, N. H., partly finished and to be finished by said Lang, but at the expense of said Henry, and according to his directions. [Then follows a list of the goods.] Received payment, Charles A. Lang."

The plaintiff claimed to recover a balance due him for work done partly before and partly after said August 21. It appeared that after the sale the plaintiff continued to work in the shop in which his son was engaged in finishing the stock, but he received, from money furnished by the defendant, more than sufficient to pay for the labor performed by him after August 21.

Charles A. Lang testified that, at the time of the sale of the stock to Henry, the understanding was that Henry should pay the balances due the workmen. This the defendant denied, and there was no evidence of any understanding or communication directly between the plaintiff and the defendant on the subject, except as contained in the bill of sale.

He further testified that, in September following the sale, the workmen in the shop became uneasy about their pay; that he went to Boston to see Henry about it, who gave him the following, which he authorized him to show to the workmen.

"Boston, September 25, 1869.
" Chas. A. Lang :

Dear Sir:—In relation to your workmen's pay, have no fear; they shall be paid for all their labor on the shoes made and sent to
                    Yours truly,      JOHN J. HENRY."

It appeared that this was shown to the plaintiff within a day or two afterwards, and no suits were commenced; and about $1,200 worth of shoes, then finished and in the shop, were immediately, and, as the plaintiff claimed, in consequence of this letter, forwarded to the defendant.

There was no evidence that the plaintiff ever released his claim for labor prior to August 21 against Charles A. Lang, or agreed to take the defendant paymaster for it, or that the debt was in any way extinguished.

The grounds upon which the plaintiff at the trial claimed to be entitled to recover are stated in the opinion of the court.

The defendant moved for a nonsuit, on the ground that there was no competent evidence on which he could be charged for the indebtedness of Charles A. Lang to the plaintiff, which accrued prior to August

21, 1869, under the statute of frauds, and that there was no evidence of a substitution or novation; and the court, being of the same opinion, ordered a nonsuit, and the plaintiff excepted.

*Barnard,* for the plaintiff, made an elaborate argument. The positions taken by him and the authorities he cited are considered in the opinion of the court.

*Sanborn & Clark,* for the defendant, besides cases referred to in the opinion, cited 1 Pars. on Cont. 188, *et seq.*

HIBBARD, J.   I. It is not disputed that all the labor which can be said to have been performed by the plaintiff for the defendant has been paid for in full.   But the plaintiff claims to recover for labor performed by him for Charles A. Lang, the plaintiff's son.   The court having ordered a nonsuit, the question for our determination is, whether upon any evidence reported the jury would have been authorized to find a verdict for the plaintiff if the case had been submitted to them.

The plaintiff at the trial appears to have relied wholly upon his special count, and it is obvious that he is not entitled to recover on the common counts.   The agreement stated in the special count is, that on September 25, 1869, Charles A. Lang was indebted to the plaintiff, and the defendant, in consideration that the plaintiff would forbear to collect his claim, promised to pay it; that the plaintiff did forbear, and the defendant became liable.   A good cause of action is here set forth, but the promise as stated must be deemed to have been a promise to answer for the debt of another in consideration of forbearance to collect it of the debtor.   It has been truly said, that the conflicting decisions of respectable courts, in relation to the application of the statute of frauds in particular cases, are irreconcilable; but, according to every reliable authority, ancient or modern, a promise to guarantee a debt in consideration of forbearance to collect it of the debtor is a collateral undertaking upon which no action can be supported by parol evidence.

II. Was the defendant's letter a sufficient note or memorandum of the alleged contract?   A letter may be a sufficient note or memorandum within the meaning of the statute.   Browne on Frauds, sec. 346; 3 Pars. on Cont. (5th ed.) 30.   And it is not indispensable that it should be addressed to the promisee.   Browne on Frauds, sec. 354. The consideration is not stated in the letter, but it is now settled in this state that this is not necessary.   *Britton* v. *Angier,* 48 N. H. 420. It is laid down that the written memorandum must contain the names of both of the contracting parties.   Browne on Frauds, sec. 372; *Sherburne* v. *Shaw,* 1 N. H. 157.   To this rule there are some exceptions, but we know of none going so far as to hold this letter sufficient in that respect.   According to *Dow* v. *Clark,* 7 Gray 198, the names of the workmen should have been inserted in order to make the memorandum sufficient; but if we allow the plaintiff to be identified as one

of the workmen by parol evidence, as it is intimated, in *Webster* v. *Ela*, 5 N. H. 540, may under some circumstances be done, we encounter other difficulties.

Must not the whole contract appear in the written memorandum? Is it not as much a violation of the statute of frauds to permit an essential part of it as all of it to be proved by parol evidence? Parol evidence is admissible to apply the contract to the parties,—as, to show that one of the signers acted as agent for the plaintiff or the defendant—*Trueman* v. *Loder*, 11 Ad. & E. 589; *Higgins* v. *Senior*, 8 M. & W. 834, 835; *Gowen* v. *Klous*, 101 Mass. 454; Browne on Frauds, sec. 364; or that Benjamin Mussey, mentioned in a written memorandum, refers to Benjamin B. Mussey—*Fessenden* v. *Mussey*, 11 Cush. 127; or to fix the consideration where the agreement provides that it shall be the same as was paid by the defendant to the plaintiff for the same property—*Atwood* v. *Cobb*, 16 Pick. 227;—but not to connect another memorandum with the one signed by the parties—*Morton* v. *Dean*, 13 Met. 388; *Boardman* v. *Spooner*, 13 Allen 358; Browne on Frauds, sec. 350; nor to show what land was intended by the words in the memorandum, "a piece of land I have sold her before witness"—*Whelan* v. *Sullivan*, 102 Mass. 205; nor, where the defendant indorsed in blank a note not payable to him, to show what he said as authority for subsequently entering a guaranty over his signature—*Hodgkins* v. *Bond*, 1 N. H. 284, 288.

In the case before us, the letter relied on does not contain evidence of a contract with the plaintiff. At the best, it only contains evidence of a contract with Charles A. Lang that the workmen shall be paid. For aught that appears in it, Charles alone and not the workmen may have been uneasy, and desirous that the defendant should guarantee the payment of their claims. Without parol evidence that the letter was written because Charles had informed the defendant that the workmen were uneasy, and that he authorized him to show it to them, the plaintiff is in no manner connected with it. Had the defendant, in this letter, authorized Charles to show it to the plaintiff, and distinctly promised to pay the plaintiff provided that he would not attempt to collect his debt of Charles, it might have been a sufficient compliance with the statute of frauds, and, when shown to him and acted on by him, it might have entitled him to recover. But an important part of this is omitted in the letter, and it is no more competent to admit parol proof of a vital and indispensable portion of the terms of a contract, than of the whole. 3 Pars. on Cont. (5th ed.) 13. We are therefore of the opinion that the letter of September 25 does not contain any sufficient note or memorandum of the alleged contract, within the meaning of the statute of frauds, and that it does not entitle the plaintiff to recover in this action. To hold otherwise would be simply to nullify the statute in order to do justice in an individual case.

III. But the plaintiff seeks to maintain his action upon the ground that here was a new and independent consideration, moving between the plaintiff and the defendant, sufficient to take the case out of the

statute; and he relies upon *Allen* v. *Thompson*, 10 N. H. 32, and *Robininson* v. *Gilman*, 43 N. H. 485, as decisive in his favor. A portion of the authorities cited in those cases fall little short of repealing the statute of frauds, by judicial construction, in a large class of cases in which the purpose of an agreement to pay the debt of another was, not to confer a benefit on the original debtor, but that the promisor might derive one for himself. Suppose A owes B $100; B pays C $10, in consideration of which C verbally promises to guarantee the payment of the debt. There are numerous decisions, some of which were pronounced by judges of high authority, going far enough to sustain an action upon this promise; yet it is very plain that this is squarely prohibited by the statute.

In no well considered case has it been held that forbearance to the debtor, or discharging a suit against him, or releasing an attachment or a lien upon his property, is sufficient to sustain an action against a guarantor of the original liability, in the absence of any written note or memorandum of the agreement. But in many cases, although the only promise was to answer for the debt of another, yet, as the leading object of the promisor was to induce the promisee to forego some lien, interest, or advantage, and thereby confer on the promisor a privilege or benefit, such an agreement has been held to be an original rather than a collateral undertaking, although the effect of it may be incidentally to discharge the debt of another. *Jepherson* v. *Hunt*, 2 Allen 423; *Burr* v. *Wilcox*, 13 Allen 273; 3 Pars. on Cont. (5th ed.) 24. "If the principal and immediate object of the transaction is to benefit the promisor, not to secure the debt of another person, the promise is considered not as collateral to the debt of another, but as creating an original debt from the promisor, which is not within the statute." *Furbish* v. *Goodnow*, 98 Mass. 297.

The cases on this subject are analyzed in Browne on Frauds, secs. 192–213, and the proper limitation of the rule is stated to be (sec. 212), that, "wherever the primary and distinctive obligation assumed by the defendant is different from that of a guarantor, although as incidental to and in the course of the discharge of that obligation the debt of another is satisfied, the defendant's promise is not within the statute," otherwise it is. In some authorities it is said that the debt thus becomes his own instead of the debt of another; in others, that in this way the promisor becomes the principal, and the original debtor a surety or guarantor for him; in others, that the transaction amounts practically to a purchase by the promisor of some lien, security, or advantage, the price being the amount of the debt guaranteed: but these theories are rarely satisfactory.

*Allen* v. *Thompson* and *Robinson* v. *Gilman*, before cited, come strictly within the reliable cases of the class previously mentioned. In the former, the promise relied on was made in consideration that the plaintiff would surrender a certain book of accounts; in the latter, it was in consideration that the plaintiff would forbear to bring a suit against the defendant as trustee; in neither was it in consideration that the

original debtor owed the debt. May the present action be sustained on a similar ground? The promise alleged in the special count is, that the defendant would pay in consideration that the plaintiff would forbear to collect his claim. We have already stated that this must be construed as referring to forbearance to collect of the original debtor; but the plaintiff's counsel has assumed that, if the plaintiff forbore to sue and attach the shoes then in the shop, or to enforce a lien upon them, this would be a forbearance to collect the claim, within the meaning of the declaration; and we may for the present purpose concede that it would be so. The case finds that " the plaintiff claimed that if the jury found that the letter of September 25 was intended by the defendant to be shown to the workmen, including the plaintiff, to keep them quiet and to prevent them from bringing suits to secure their debts, as they threatened, and that the letter was shown to the workmen, including the plaintiff, and that the plaintiff acted upon the assurance held out in the letter and brought no suit by reason thereof, he would be entitled to recover for all labor performed on shoes made and sent to the defendant." It is not stated that the plaintiff specified in what way he should or might have brought a suit and secured his claim, had the defendant not promised to pay it—whether by attaching the shoes as the property of Charles A. Lang, fraudulently sold to the defendant, by bringing a trustee process against him, or in some other way. Had the defendant verbally promised to pay the plaintiff's debt, in consideration that he would not attach the shoes or would not commence a trustee process against the defendant, he might have been liable, upon the authority of *Robinson* v. *Gilman*, before cited. That there was no evidence that Charles had any attachable interest in the shoes, or that the defendant could have been held liable as trustee, probably would be immaterial; but it does not appear that there was any evidence that the defendant was ever informed that the plaintiff claimed a right to attach the property, or to hold him liable as trustee; and if the defendant had no notice that the plaintiff set up such a claim, he cannot be supposed to have contracted with reference to it. The case even fails to find that the plaintiff ever threatened to bring a suit, or contemplated bringing one, to secure his debt before he commenced this action.

But it was claimed, in the argument for the plaintiff, that he, in consideration of the promise contained in the defendant's letter of September 25, released a lien he had upon the shoes on which he had worked. Upon that state of facts he might maintain this action, as decided in authorities collected in *Robinson* v. *Gilman*, 43 N. H. 492. There does not appear to have been any evidence that the plaintiff had any such lien on that day. He might have a lien for work done either after or before the sale by Charles A. Lang to the defendant, by virtue of retaining the property in his possession on September 25, but it is not stated that he then had any of the shoes in his possession. For aught that appears, the shoes on which all the workmen had worked remained in the possession of Charles until they were sent to the

defendant. If, however, the plaintiff claimed to have a lien on the shoes, and the defendant yielded to it, he is now estopped from denying that the lien existed. *Cross* v. *Richardson*, 30 Vt. 646 ; *Fish* v. *Thomas*, 5 Gray 48. It does not, however, appear that the defendant was ever informed that the plaintiff claimed such a lien, nor even that the plaintiff at any time before or during the trial did claim it, and the defendant certainly could not yield to it until he was aware that it was claimed.

Upon the facts reported, we are unable to bring this case within any recognized principle which dispenses with the necessity for a note or memorandum in writing, and we are of the opinion that the plaintiff is not entitled, upon the authority of any of the cases upon which his counsel relies, to maintain an action by virtue of the transaction of September 25.

IV. The plaintiff's counsel has suggested one additional ground on which he claims that the jury might have returned a verdict in his favor. The case finds that " Charles A. Lang testified that, at the time of the sale of the stock to Henry, the understanding was that Henry should pay the balances due the workmen." However this may contradict the contract stated in the bill of sale, it is well settled that the plaintiff, not being a party to the instrument, is not precluded from contradicting it. 1 Gr. Ev., sec. 279. It is claimed that this testimony not only means that it was agreed between the defendant and Charles that the defendant should pay the balances due the workmen, but that this should constitute a part of the consideration for the purchase of the stock. We need not determine whether the testimony reported will bear this construction. Such an agreement upon such a consideration, though entered into by the plaintiff, the defendant, and the original debtor, is held in Massachusetts to be within the statute of frauds, because the consideration moves wholly from the original debtor, the plaintiff being unconnected with it. *Curtis* v. *Brown*, 5 Cush. 488 ; *Furbish* v. *Goodnow*, 98 Mass. 296. The weight of authority, however, is, that it is not within the statute for that reason. Browne on Frauds, secs. 166–169 ; *Dearborn* v. *Parks*, 5 Gr. Ev. 81 ; *Maxwell* v. *Haynes*, 41 Me. 559 ; *Fullam* v. *Adams*, 37 Vt. 391 ; *D. & H. Canal Co.* v. *Westchester County Bank*, 4 Den. 97 ; *Robbins* v. *Ayres*, 10 Mo. 538 ; *Brown* v. *Strait*, 19 Ill. 88.

But this agreement, if made at all, was not made with the plaintiff, and does not appear to have been assented to by him after it was made. How does this circumstance affect the question ? Had here been a definite agreement that the defendant, as a part of the consideration for the stock, would pay a specified sum to the plaintiff, there are numerous authorities to the point that, although the plaintiff was not a party to the contract, and the consideration did not move from him, the want of privity would not present an insuperable difficulty. *Dearborn* v. *Parks*, 5 Gr. Ev. 81 ; *Arnold* v. *Lyman*, 17 Mass. 400 ; *Hall* v. *Marston*, *ib.* 575 ; *Brewer* v. *Dyer*, 7 Cush. 340 ; *Mellen* v. *Whipple*, 1 Gray 322 ; *Brown* v. *Strait*, 19 Ill. 88 ; *Barber* v. *Bucklin*, 2 Den. 45 ; *Lawrence* v.

*Fox*, 20 N. Y. 269; *Burr* v. *Beers*, 24 N. Y. 178; *Coster* v. *Albany*, 43 N. Y. 411.

In many of these cases it does not appear that the plaintiff assented to the agreement in any other way than by bringing a suit upon it. In some of them it is expressly stated that that is sufficient. "The law, operating upon the act of the parties, creates the duty, establishes the privity, and implies the promise and obligation on which the action is founded." SHAW, C. J., in *Carnegie* v. *Morrison*, 2 Met. 396. But in this state it has been uniformly held, that, in order to maintain such an action, the plaintiff must at least give his assent by making a demand before he will be entitled to commence his action. *Butterfield* v. *Hartshorn*, 7 N. H. 349; *Warren* v. *Batchelder*, 16 N. H. 580. In the last named case, when first before the court—15 N. H. 129, 136—it was held that there must be proof of an agreement by the plaintiff to accept the defendant as his debtor, so as to extinguish his original debt; but in the same case, as last reported—16 N. H. 580, 581—a demand and refusal, followed by a suit, were held to be such evidence of an election to accept the new arrangement as a substitute for the original debt, as would extinguish it.

The objection to allowing a plaintiff to sue in such a case, before the antecedent debt is discharged, may not, on principle, be more serious than in many familiar cases, where, upon a collateral undertaking made directly with the plaintiff, a right of action has been sustained, although the antecedent debt still subsisted. Browne on Frauds, sec. 212; *Fullam* v. *Adams*, 37 Vt. 394. But the whole doctrine, of allowing an action to be maintained on a contract made for the benefit of the plaintiff by a third person not his agent, is at war with established principles on the subject of parties to actions; and it seems that in Massachusetts we may expect no further "extension of that anomalous doctrine." *Field* v. *Crawford*, 6 Gray 117.

In the present case it not only is not stated that the plaintiff made a demand, from which the extinguishment of his antecedent debt may be inferred, but the case expressly states that there was no evidence that he "ever released his claim for labor prior to August 21 against Charles A. Lang, or agreed to take the defendant as paymaster for it, or that the debt was in any way extinguished." It does not even appear that he brought this suit to recover upon such a contract. On the contrary, it seems that the plaintiff did not at the time this action was commenced, nor even at the trial, rely on a promise of the defendant to pay, in consideration that Charles A. Lang had placed or would place goods or money in his hands for the purpose.

But the evidence reported, which it is claimed entitles the plaintiff to recover upon this ground, is fatally defective for another reason. The promise relied on is, to "pay the balances due the workmen," without naming them, or stating the sum due to each or to any one of them, or the gross sum due to all of them. That no action can be maintained by the workmen upon this loose and indefinite promise is conclusively settled in the well considered case of *Dow* v. *Clark*, 7 Gray

198, to which we have already referred in considering whether a written note or memorandum of an agreement which is within the statute of frauds, if sufficient in other respects, is defective, unless the names of both of the contracting parties appear in it.   METCALF, J., in delivering the opinion of the court in that case, uses a portion of the following language, which we have altered to adapt it to the present case. If the plaintiff can maintain this action upon this ground, so may each of the other workmen, whatever may be their number or the amount of their respective claims, and the defendant may be held answerable to persons of whom he has never heard.   And he will be bound in such actions to litigate the question, whether the party who sues has a legal claim on Charles A. Lang, or to pay the respective sums claimed, whatever they may be.   Our attention has not been called to any case, ancient or modern, nor do we know of any in England or in America, which goes so far as to hold a party liable to pay the debt of another upon a promise so vague and indeterminate as this.

It may also be observed, that there appears to be no count in the plaintiff's declaration upon which he could recover if the proof were clear that the defendant, as a part of the consideration for the stock purchased, promised to pay him a specific sum, and that he duly assented to it.

The plaintiff clearly was not entitled to go to the jury upon this question, and as he was not entitled to go to the jury upon any other question, there must be                              *Judgment on the nonsuit.*